[This opinion has been published in *Ohio Official Reports* at 75 Ohio St.3d 77.]

THE STATE EX REL. LAMP, APPELLANT, *v.* J.A. CROSON COMPANY ET AL.,
APPELLEES.

[Cite as *State ex rel. Lamp v. J.A. Croson Co.*, 1996-Ohio-319.]

*Workers' compensation—Specific safety requirements—Ohio Adm.Code 4121:1-3-06(B)(3), read in conjunction with Ohio Adm.Code 4121:1-3-06(D)(4) and (5), requires vehicles that operate within an off-highway jobsite be equipped with seatbelts at all times, irrespective of where the vehicles are operating at the time an accident occurs.*

(No. 94-814—Submitted September 26, 1995—Decided March 4, 1996.)

APPEAL from the Court of Appeals for Franklin County, No. 93AP-329.

_____

{¶ 1} Eddie Duane Lamp, claimant and appellant, was employed as a plumber for appellee J.A. Croson Company ("Croson"), a construction contractor. In 1988, Croson was involved in a construction project in Mansfield. The jobsite was at an off-highway location with restricted public access.

{¶ 2} For approximately four to five months, claimant had been transported to the site in a company van. Claimant was not required to use company transportation, but chose to as a convenience. The van was a Ford Econoline equipped with only a driver and passenger seat. Employees riding in the van rode on benches set up in the back. The seats were not secured to the floor nor were any restraining devices provided.

{¶ 3} Construction materials were also transported with the employees. These include both full and empty acetylene bottles, tool boxes, and plumbing fittings.

**{¶ 4}** On the morning of March 16, 1988, claimant and several co-workers were traveling on Interstate 71 to the jobsite when the van hit a patch of ice and flipped. Claimant injured his back, legs, left arm, and left shoulder.

**{¶ 5}** Appellee Industrial Commission of Ohio allowed claimant's workers' compensation claim. Claimant later moved for an additional award for a violation of specific safety requirements ("VSSR"), alleging that his employer had violated two specific safety requirements.

**{¶ 6}** The commission denied the application, finding that no specific safety requirement had been violated when Lamp sustained his injuries.

**{¶ 7}** Lamp filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission abused its discretion in denying his application. The court denied the writ.

**{¶ 8}** The cause is now before this court upon an appeal as of right.

———————————

*Gibson & Robbins-Penniman* and *Gus Robbins-Penniman*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Gerald H. Waterman*, Assistant Attorney General, for appellee Industrial Commission of Ohio.

*Carlile, Patchen & Murphy, Denis J. Murphy* and *John W. Seidensticker*, for appellee J.A. Croson Co.

———————————

**PFEIFER J.**

**{¶ 9}** The parties to this action contest whether a specific statutory requirement was violated when Lamp sustained his injuries. The parties do not contest whether Lamp was injured during the course of his employment. That issue was determined when Lamp's workers' compensation claim was allowed.

**{¶ 10}** A few simple principles should guide our analysis of whether a specific safety requirement was violated. Specific safety requirements must be sufficiently specific to "plainly * * * apprise an employer of his legal obligation

toward his employees." *State ex rel. Trydle v. Indus. Comm.* (1972), 32 Ohio St.2d 257, 261, 61 O.O.2d 488, 490, 291 N.E.2d 748, 752. Because a VSSR results in a penalty, specific safety requirements must be strictly construed in the employer's favor. *State ex rel. Burton v. Indus. Comm.* (1989), 46 Ohio St.3d 170, 545 N.E.2d 1216.

**{¶ 11}** Under *State ex rel. Harris v. Indus. Comm.* (1984), 12 Ohio St.3d 152, 153, 12 OBR 223, 224, 465 N.E.2d 1286, 1288, the commission "has the discretion to interpret its own rules; however, where the application of those rules to a unique factual situation gives rise to a patently illogical result, common sense should prevail."

I

**{¶ 12}** We first must determine whether the Ohio Administrative Code sections regulating construction activities apply to this case. The commission determined that the claimant was not engaged in a construction activity and, thus, that the claimant was precluded from recovering damages as the result of a VSSR. For the following reasons we conclude that the commission erred when it made this determination. Ohio Adm.Code 4121:1-3-01(A) provides:

"The purpose of this code is to provide safety for life, limb and health of employees engaged in construction activity. * * *

"Activities within the scope of this code, generally referred to herein as 'construction' include the demolition, dismantling, excavation, construction, [and] erection * * * of buildings and other structures and the installation of machinery or equipment and all operations in connection therewith * * *."

**{¶ 13}** After examining this language governing the scope of its rules, the commission stated:

"The claimant alleges that even though the accident occurred before he got to the construction jobsite that the transporting of construction materials is 'an

operation in connection therewith' as defined by 4121:1-3-01(A) and thus he was engaged in construction activity at the time of the accident.

"This position is rejected. It is concluded that the transporting of materials was an activity that is only preparatory in nature. That is to say that at the time of the accident the claimant was only preparing to engage in construction activity by the transporting of materials to the jobsite. Construction activity must occur at the jobsite itself, and being that the claimant had yet to arrive at the jobsite, his actions in moving materials to the jobsite would not yet be construction activity.

"If the claimant had been riding in the van after it had arrived at the jobsite wherein it was moving within the jobsite for a construction related purpose or even if the van had left the jobsite after it had arrived and was returning to the jobsite with construction materials, then the claimant would have been engaged in construction activity because those activities would have taken place after the van arrived at the construction site."

{¶ 14} We disagree with the commission's conclusion that the claimant was not engaged in a construction activity. While we are normally obligated to defer to the commission's interpretation of its own rules, we will not defer when the commission's interpretation implicitly adds language to the text of the rule.

{¶ 15} In examining the facts surrounding the claimant's injury, the commission did not allow the claimant's VSSR claim because the commission found the transportation of construction materials from the contractor's off-site premises to a construction site to be a preparatory activity and not a "construction activity" as defined in Ohio Adm.Code 4121:1-3-01. However, this preparatory-activity exception to the scope of rule appears nowhere in the text of the rule.

{¶ 16} In its definition of "construction activities," Ohio Adm.Code 4121:1-3-01 does not focus on whether the employment activity is preparatory. Instead, the rule focuses on whether the employment activity involves "demolition, dismantling, excavation, construction, [and] erection * * * of buildings and other

structures and the installation of machinery or equipment," or any activity that is performed "in connection therewith."  Agreeing with the commission's conclusion that Ohio Adm.Code 4121:1-3-01(A) excludes preparatory activities would require us to rewrite the rule and add a preparatory-activities exception.  However, it is not our role to rewrite the commission's rules.  Only the Administrator of Workers' Compensation or the General Assembly may rewrite safety requirements.  R.C. 4121.13. and 4121.47.

{¶ 17} Having rejected the commission's construction of  Ohio Adm.Code 4121:1-3-01, we next examine whether the plain language of this provision covers the claimant.  At the time of his injury, the claimant was a passenger in a van that was transporting  plumbing fittings, acetylene bottles, tool boxes, and other materials to be used at the construction site.  Because these items are clearly connected to construction of the building, the transportation of the materials from the contractor's off-site facility to the construction site is a construction activity and falls within the scope of Ohio Adm.Code 4121:1-3-01.

II

{¶ 18} We next must determine whether the commission erred when it determined that Croson did not violate Ohio Adm.Code 4121:1-3-06(D)(4) and (5) because claimant was not riding in a "motor vehicle" as defined in 4121:1-3-06(B)(3).  Ohio Adm.Code 4121:1-3-06(D)(4) and (5) provide:

"(D)  Motor vehicles.

"* * *

"(4)  Trucks used to transport employees.

"(a)   Trucks assigned to, or generally used for the transportation of employees shall be equipped with seats and back rests which are securely fastened.

"(b)   Tools and materials transported in the same compartment with employees shall be secured to prevent movement.

"(5)  Seat belts.

"The employer shall provide and the employee(s) shall use seat belts on all motor vehicles which have rollover protective structures or cabs. * * *"

{¶ 19} Ohio Adm.Code 4121:1-3-06(B)(3) defines "motor vehicles" as "all those vehicles that operate within an off-highway jobsite, not open to unrestricted public traffic."

{¶ 20} While it is undisputed that the van claimant was riding in did not have seatbelts or secured seats, the commission determined that because the accident that injured the claimant did not occur at the off-highway jobsite, the employer could not be penalized for the van's lack of prescribed safety features. The commission reasoned that the phrase "vehicles that operate within an off-highway jobsite" requires seatbelts and secured seats only while vehicles are within the boundaries of a jobsite.

{¶ 21} Because this interpretation again rewrites the safety requirement that the commission interpreted, we reject it. If the drafters of Ohio Adm.Code 4121:1-3-06(B)(3) intended to immunize employers whose vehicles are not equipped with seatbelts or secured seats once the vehicles have departed the jobsite the rule would have defined "motor vehicles" as "vehicles *while operating* within an off-highway jobsite," not as "vehicles that operate within an off-highway jobsite." Thus, Ohio Adm.Code 4121:1-3-06(B)(3), read in conjunction with Ohio Adm.Code 4121:1-3-06(D)(4) and (5), requires vehicles that operate within an off-highway jobsite be equipped with seatbelts at all times, irrespective of where the vehicles are operating at the time an accident occurs.

{¶ 22} In this case, the van that claimant was riding in had operated within Croson's off-highway jobsite repeatedly for the past four to five months. Thus, the van was a vehicle that operated within the jobsite and was required to have the safety restraints listed in Ohio Adm.Code 4121:1-3-06(D)(4) and (5).

{¶ 23} Because we find that the commission abused its discretion when it did not allow Lamp's VSSR claim, we reverse the Court of Appeals for Franklin

County. We order the commission to vacate its order and to enter a new order granting Lamp's application.

*Judgment reversed*
*and writ granted.*

DOUGLAS, RESNICK and F.E. SWEENEY, JJ., concur.

MOYER, C.J., WRIGHT and COOK, JJ., dissent.

———————————

**WRIGHT, J., dissenting.**

{¶ 24} The majority correctly states, "Because a VSSR results in a penalty, specific safety requirements must be strictly construed in the employer's favor." However, the majority then proceeds to expansively construe "all operations in connection therewith," Ohio Adm.Code 4121:1-3-01(A), to the detriment of Croson, the employer. That phrase, while admittedly quite inclusive, does not encompass every single activity connected in any way with the construction trade.

{¶ 25} The commission determined that accepting a ride in a company van as a matter of personal convenience is not an activity connected with construction. I would affirm that determination because it makes common sense and it surely is "not patently illogical." See *State ex rel. Harris v. Indus. Comm.* (1984), 12 Ohio St.3d 152, 153, 12 OBR 223, 224, 465 N.E.2d 1286, 1288. Accordingly, I respectfully dissent.

MOYER, C.J., and COOK, J., concur in the foregoing dissenting opinion.

———————————