The State ex rel. Devore Roofing & Painting, Appellee,
*v.* Industrial Commission of Ohio et al., Appellants.

[Cite as *State ex rel. Devore Roofing & Painting v. Indus. Comm.*, 101 Ohio St.3d 66, 2004-Ohio-23.]

(No. 2002–0148—Submitted November 4, 2003—Decided January 21, 2004.)

Alice Robie Resnick, J.

{¶ 1} The relevant facts in this case are straightforward and undisputed. On June 29, 1998, claimant-appellant, Dennis R. Walden, received a multitude of massive injuries in the course of and arising from his employment as a roofer with appellee, Devore Roofing & Painting ("Devore"). Walden was electrocuted when a piece of aluminum downspout that he was maneuvering for installation on a building contacted an overhead electric power line. The force of the shock propelled Walden over a guarded side of the scaffold upon which he was working, and he fell at least 25 feet to the ground below.

{¶ 2} Following the allowance of his workers' compensation claim, Walden filed an application for an additional award based on the violation of a specific safety requirement ("VSSR"), alleging that Devore had failed to comply with several provisions of Ohio Adm.Code Chapter 4121:1–3. As relevant here, a staff hearing officer ("SHO") for appellant, Industrial Commission of Ohio, found (1) that Devore was in compliance with Ohio Adm.Code 4121:1–3–03(J)(1), which requires the employer to provide lifelines and safety belts when the employee is exposed to hazards of falling more than six feet, (2) that Devore had violated Ohio Adm.Code 4121:1–3–10(C)(4)(b), requiring guardrails on scaffolds, but that Walden had failed to prove that this violation was a proximate cause of his injuries, and (3) that Devore had violated Ohio Adm.Code 4121:1–3–07(E), which pertains to the operation of cranes, derricks, hoists, and other construction equipment in proximity to overhead electrical conductors. Based on the latter finding, the

SHO granted an award of 40 percent of the maximum weekly rate, and the commission subsequently denied Devore's motion for a rehearing.

{¶ 3} Devore sought a writ of mandamus in the Tenth Appellate District to vacate the SHO's order as it pertains to application of Ohio Adm.Code 4121:1-3-07(E). Walden also sought a writ of mandamus from the court of appeals on the basis that the commission had abused its discretion in finding that there was no violation of Ohio Adm.Code 4121:1-3-03(J), but this request was conditioned upon the court's granting of Devore's writ.

{¶ 4} The cause was assigned to a magistrate, who found that the commission did not abuse its discretion with respect to either code provision and recommended that both writs be denied. However, the court of appeals sustained Devore's objections to the magistrate's decision, denied Walden's conditional request for a writ, and ordered the commission to vacate its award. With regard to the applicability of Ohio Adm.Code 4121:1-3-07(E), the court of appeals found as follows:

{¶ 5} "The Ohio Supreme Court has consistently emphasized that a VSSR regulation must be strictly construed as being in the nature of penalty provisions. The determination of the commission to apply the provisions of a regulation titled 'Cranes, Hoists, and Derricks' to a scaffold violates the requirement that before an employer can be found to have committed a violation of a safety regulation, that regulation must prescribe, 'specific and definite requirements or standards of conduct which are of a character plainly to apprise an employer of his legal obligation toward his employees.' The plain language of the regulation in question, Ohio Adm.Code 4121:1-3-07(E) was insufficient to put the employer on notice that its use of scaffolding was subject to the requirements of the regulatory section addressing the operation of cranes, hoists, and derricks." (Citations omitted.)

{¶ 6} The cause is now before this court pursuant to an appeal as of right.

{¶ 7} The primary issue in this case is whether the commission abused its discretion in finding that Devore had failed to comply with the requirements of Ohio Adm.Code 4121:1-3-07(E). A second issue, which is conditioned upon an affirmative finding on the first, is whether the commission abused its discretion in finding that Devore did comply with the requirements of Ohio Adm.Code 4121:1-3-03(J).

{¶ 8} Ohio Adm.Code Chapter 4121:1-3 governs specific safety requirements relating to construction. "The purpose of this chapter of the Administrative Code is to provide safety for life, limb and health of employees engaged in construction activity." Ohio Adm.Code 4121:1-3-01(A). To this end, Ohio Adm. Code 4121:1-3-07, entitled "Cranes, hoists and derricks," provides:

{¶ 9} "(E) Proximity to overhead electric conductors.

{¶ 10} "When it is necessary to move or operate cranes, derricks, or any other type of hoisting apparatus or construction equipment within ten feet of an electrical conductor carrying one hundred ten volts or more, the employer shall:

{¶ 11} "(1) Arrange with the owner of the conductor, or the owner's authorized representative, to deenergize the conductor, or

{¶ 12} "(2) Arrange with the owner of the conductor, or the owner's authorized representative, to move the conductor, or

{¶ 13} "(3) Arrange with the owner of the conductor, or the owner's authorized representative, to guard the conductor from accidental contact and the employer shall designate an employee to act as signalman to direct the operator in the movement of derricks, cranes, or any other type of hoisting apparatus or construction equipment, or

{¶ 14} "(4) Install an insulated type guard about the boom or arm of the equipment and a dielectric insulator link between the load and the block and the employer shall designate an employee to act as a signalman to direct the operator in the movement of derricks, cranes, or any other type of hoisting apparatus or construction equipment."

{¶ 15} It is undisputed that the overhead power lines in this case carried more than 110 volts of electricity (7,200 volts to be exact), that the scaffold upon which Walden was working was erected by Devore within 10 feet of the power lines, and that Devore took none of the precautionary measures listed in Ohio Adm.Code 4121:1–3–07(E). The sole dispute here concerns the applicability of this safety requirement in the first instance to stationary scaffolding.

{¶ 16} Devore's overall contention is that "the [staff] hearing officer's determination that the scaffold was covered by this rule and was being 'operated' was clearly erroneous." According to Devore, Ohio Adm.Code 4121:1–3–07(E) was "not intended to cover the scaffolding involved in the instant claim." There are actually three overlapping components to Devore's assertion. We will analyze each separately.

{¶ 17} First, Devore argues that by its express terms, Ohio Adm.Code 4121:1–3–07(E) is inapplicable to scaffolds. In particular, Devore points out that the rule requires the employer to take one of four precautionary measures when it is necessary to "move or operate" cranes, derricks, hoists, or other construction equipment within ten feet of an electrical conductor. Directing the court's attention to the fourth precautionary option, which allows the employer to install "an insulated type guard about the boom or arm of the equipment," Devore states

that this option suggests that "the regulation is geared toward cranes, hoists, derricks and other *moving* machinery, not an inanimate object such as a scaffold." (Emphasis sic.) Thus, a scaffold, which is defined as a "platform" under Ohio Adm.Code 4121:1–3–10(B)(30), is "not 'moved' or 'operated' within the meaning of 4121:1–3–07(E)."

{¶ 18} Devore takes particular aim at the SHO's finding that Walden was "operating" the scaffold at the time of his injury. Referring to this finding as a "tortured interpretation of the term 'operated,'" Devore argues that "[s]uch reasoning is not the stuff that narrow construction [of a specific safety require- ment] is made of" and that "[u]nder equivalent logic, one would be 'operating' the sidewalk upon which he or she was standing."

{¶ 19} With regard to the express terms of Ohio Adm.Code 4121:1–3–07(E), it happens that just the opposite is true, that is, by its express terms Ohio Adm.Code 4121:1–3–07(E) *does apply* to scaffolds. As Devore points out, Ohio Adm.Code 4121:1–3–10(B)(30) defines "scaffold" as "any temporary elevated platform and its supporting structure used for supporting employees, materials, or equipment." But 4121:1–3–07(E) does not purport to be limited to cranes, derricks, and hoists, and it does not contain any restrictive language such as other "moving machinery," as Devore suggests. Instead, it applies to cranes, derricks, hoists, and "any other type of * * * construction equipment." The critical question, therefore, is whether "construction equipment" means or in- cludes scaffolds or platforms.

{¶ 20} To answer this question, we need not engage in a strict or narrow interpretation of "construction equipment." In fact, it would be entirely inappro- priate for this court to construe that term at all. This is because the regulation contains its own definition of construction equipment. Under Ohio Adm.Code 4121:1–3–01(B), which applies throughout Chapter 4121:1–3, "equipment" "means and includes all * * * scaffolds [and] platforms * * * used in connection with construction operations." Ohio Adm.Code 4121:1–3–01(B)(5). Thus, when read in conjunction with that definition, 4121:1–3–07(E) actually provides that the employer shall take certain steps "[w]hen it is necessary to move or operate any cranes, derricks, or any [scaffold or platform] within ten feet of an electrical conductor carrying one hundred ten volts or more." To hold otherwise would not result from a legitimate "strict construction" of a specific safety requirement, but would instead constitute an impermissible judicial excision of the "construction equipment" language under the guise of strict construction. We can no more adopt an interpretation that essentially deletes language from the text of a safety rule than we can accept an "interpretation [that] implicitly adds language to the

text of the rule." *State ex rel. Lamp v. J.A. Croson Co.* (1996), 75 Ohio St.3d 77, 80, 661 N.E.2d 724.

{¶ 21} Moreover, we see no logical reason to presume that the code's drafters inserted such an expansive phrase as "move or operate" in order to denote some sort of fundamental distinction between bodies in motion and bodies at rest. The only logical function of this phrase is to indicate the undesirability of exposing unprotected workers to the dangers of an electrical current of sufficient magnitude to cause injury, whether directly or through the medium or agency of their equipment. Otherwise, the court would have to accept the patently illogical result that Ohio Adm.Code 4121:1–3–07(E) covers only the situation where construction equipment, but not the employee using the equipment, is brought within 10 feet of an electrical conductor.

{¶ 22} Even if the "move or operate" language was considered to limit applicability, we could not interpret this phrase so strictly as to preclude its practical application under varying circumstances. In *State ex rel. Harris v. Indus. Comm.* (1984), 12 Ohio St.3d 152, 153, 12 OBR 223, 465 N.E.2d 1286, we explained that "[t]he commission has the discretion to interpret its own rules; however, where the application of those rules to a unique factual situation gives rise to a patently illogical result, common sense should prevail." By the same token, we must defer to the commission's interpretation when it relies upon its own common sense to avoid an illogical result.

{¶ 23} In this case, the SHO concluded that "the claimant was operating the scaffold at the time of his injury in the sense that he was using it to perform the construction activity he was required to do." Considering that the definition of "equipment" "includes all * * * scaffolds [and] platforms * * * used in connection with construction operations," we find nothing unreasonable or illogical in this result. Contrary to Devore's assertion, the court did not adopt "a much narrower interpretation of the word 'operating' " in *State ex rel. Colliver v. Indus. Comm.* (1999), 84 Ohio St.3d 476, 705 N.E.2d 349. In *Colliver*, we held that the commission did not abuse its discretion in finding that a maintenance worker was not operating a forklift within the meaning of Ohio Adm.Code 4121:1–5–13(F)(1)(g) and (h), when his only purpose in moving the truck was to test its brakes. In so holding, we essentially allowed an interpretation of "operate" that focuses on whether equipment is being used to perform the work or activity for which it was designed, which is precisely how the commission in this case has defined the term "operate" under Ohio Adm.Code 4121:1–3–07(E). In both cases, the commission's interpretation of the word "operate" is tied to the employee's use of the equipment consistent with its purpose.

{¶ 24} For its second argument, Devore maintains that "[g]iven the rule of strict interpretation, Ohio courts have repeatedly stated that selected subsections of rules may not be applied outside the scope of the regulation" or "held that safety rules could only be applied to the items enumerated in the title." The problem with this argument, however, is that it finds no support in any of the three cases upon which Devore relies.

{¶ 25} In *State ex rel. Cunningham v. Indus. Comm.* (1987), 30 Ohio St.3d 73, 30 OBR 176, 506 N.E.2d 1179, the court declined the claimant's invitation to construe the term "machine" under former IC–5–03.07(A) and (B) as including an arc/butt strip welder, since the title and first sentence of IC–5–03.07 clearly specified that the rule applied only to "power transmission machinery." In *Buckeye Steel Castings, Div. of Buckeye Internatl., Inc. v. Indus. Comm.* (1988), 49 Ohio App.3d 91, 550 N.E.2d 486, the court of appeals rejected the commission's finding that the phrase "all jib cranes" under Ohio Adm.Code 4121:1–5–14(D)(2)(a) includes a pneumatic jib crane, when paragraph (D) itself is titled "[e]lectric jib cranes" and (D)(1) defines only electric jib cranes. And in *State ex rel. Davidson v. Indus. Comm.* (1945), 145 Ohio St. 102, 30 O.O. 309, 60 N.E.2d 664, the court held that former Section 16 of the Code of Specific Safety Requirements, which was titled "Power Presses—Guarding" and addressed the guarding of "power presses" but which contained a reference to "every press," did not impose a guarding requirement for a hydraulic press.

{¶ 26} These cases do not hold, however, that the text of a safety rule may never exceed the scope of its title, nor do they require that safety rules must have all-encompassing titles. Instead, the cases simply concluded that the text of the particular safety regulation at issue was not intended to extend beyond its topic, and this conclusion was possible only because the particular rule's text was susceptible of an interpretation coincident with its title. But this would not have been the case had the rule's text expressly extended coverage beyond the items enumerated in the title. For example, the court in *Cunningham* could not have refused to apply former IC–5–03.07(A) and (B) to arc/butt strip welders, even with that rule's "power transmission machinery" heading, had the rule specifically required lock-out devices on "power transmission machinery or any other type of machine," while defining "machine" to include all arc/butt strip welders. Cases such as *Cunningham, Buckeye Steel Castings,* and *Davidson,* which essentially harmonize rule headings and concomitant safety requirements, are simply irrelevant where the drafters express their intent to expand the scope of a rule beyond the coverage reflected in its title.

{¶ 27} In the present case, there is no justification for interpreting the heading of Ohio Adm.Code 4121:1–3–07 in order to ascertain the meaning of "construction

equipment," since that term is not ambiguous and, therefore, may not be interpreted. Unlike former IC–5–03.07(A) and (B), Ohio Adm.Code 4121:1–5–14(D), and former Section 16 of the Code of Specific Safety Requirements, the text of Ohio Adm.Code 4121:1–3–07(E) expressly exceeds the parameters of its title by imposing requirements not only on cranes, hoists, and derricks, but additionally on any type of construction equipment, including specifically all scaffolds and platforms used in connection with construction operations.

{¶ 28} However, while the three cases Devore cites do not advance its position, the question remains as to whether a safety rule should be required to have headings that reflect the full scope and applicability of its text. Thus, Devore's final argument tracks the reasoning of the court of appeals, which is that Ohio Adm.Code 4121:1–3–07 fails to provide the employer with adequate notice of a scaffolding requirement. In other words, even if Ohio Adm.Code 4121:1–3–07(E) does purport to regulate the use of scaffolds, it does not plainly apprise the employer of its legal obligations because of its cryptic placement among a set of rules that few employers would expect to contain a scaffolding requirement.

{¶ 29} Accordingly, Devore points out that the requirements for scaffolding are "covered at length in a separate rule, [Ohio Adm.Code] 4121:1–3–10," and maintains that "[n]owhere in those 44 pages of regulations [governing scaffolding] is there a companion regulation concerning working *off* a scaffold in proximity to a power source." (Emphasis sic.) Devore facetiously wonders, therefore, whether it "should also have looked under the 'Helicopters' (4121:1–3–23) and 'Diving Operations' (4121:1–3–21) regulations, which are also contained in the Construction Code." We are not persuaded.

{¶ 30} Ohio Adm.Code 4121:1–3–07(E) plainly and unequivocally apprises the employer that it has certain legal obligations to its employees when it is necessary to move or operate any type of construction equipment, including scaffolds, within ten feet of an electrical conductor carrying at least 110 volts of electricity. Thus, on its face, Ohio Adm.Code 4121:1–3–07(E) is unambiguous and satisfies the constitutional mandate for specificity in a safety requirement. Yet, despite its express applicability to scaffolds, Devore would have us decline to apply Ohio Adm.Code 4121:1–3–07(E) because the code's drafters could have made it easier to find, for example, by placing it elsewhere in the construction code or inserting an equivalent provision among the scaffolding regulations under Ohio Adm.Code 4121:1–3–10. However, neither Devore nor the court of appeals has cited any decision in which this court has gone so far as to question, let alone override, the drafters' judgment with regard to the proper location of a specific safety requirement. This kind of oversight would cross the boundary between

judicial and legislative activity, as it enables courts to micromanage the organization of a regulatory code.

{¶ 31} We have held on several occasions that the applicability of a specific safety requirement was limited to the particular industry addressed by the Administrative Code chapter in which it was contained. For example, we found that certain safety requirements under Ohio Adm.Code Chapter 4121:1–5 (Workshops and Factories) or Chapter 4121:1–19 (Electrical Supply Lines), were inapplicable to an employer in a different industry, such as construction or tree trimming. See, e.g., *State ex rel. Double v. Indus. Comm.* (1992), 65 Ohio St.3d 13, 599 N.E.2d 259; *State ex rel. Sorrells v. Mosier Tree Serv.* (1982), 69 Ohio St.2d 341, 23 O.O.3d 312, 432 N.E.2d 197; *State ex rel. Miller Plumbing Co. v. Indus. Comm.* (1948), 149 Ohio St. 493, 37 O.O. 197, 79 N.E.2d 553. Yet, we have reached the opposite result when the specific requirement at issue was expressly made applicable to employers in a different industry. See *State ex rel. Parks v. Indus. Comm.* (1999), 85 Ohio St.3d 22, 706 N.E.2d 774. It stands to reason that if the drafters of a safety requirement located in a chapter devoted to a particular industry can expressly extend it to another industry, a requirement that is located in a rule devoted to certain equipment can expressly be extended to other equipment.

{¶ 32} Based on all of the foregoing, we conclude that the commission did not abuse its discretion in finding that Devore was in violation of Ohio Adm.Code 4121:1–3–07(E). Having found the commission's order sustainable on this basis, it is unnecessary for us to consider Walden's conditional claim that the commission abused its discretion in finding that Devore complied with Ohio Adm.Code 4121:1–3–03(J).

{¶ 33} Accordingly, the judgment of the court of appeals is reversed, and the order of the Industrial Commission awarding additional compensation based on Devore's violation of Ohio Adm.Code 4121:1–3–07(E) is reinstated.

Judgment reversed
and order reinstated.

MOYER, C.J., F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

---

Dinsmore & Shohl, George B. Wilkinson and Brian P. Perry, for appellee.

Jim Petro, Attorney General, and Cheryl J. Nester, Assistant Attorney General, for appellant Industrial Commission.

Casper & Casper and Patrick W. Allen; Kircher, Robinson & Welch and Greg J. Claycomb, for appellant Dennis Walden.