[Cite as *State ex rel. Benjamin Steel Co., Inc. v. Indus. Comm.*, 2017-Ohio-8214.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel.<br>Benjamin Steel Co., Inc., | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | : | No. 15AP-107 |
| | : | |
| Industrial Commission of Ohio and<br>Roosevelt Harris, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on October 17, 2017

**On brief:** *Martin, Browne, Hull & Harper, P.L.L., Randall M. Comer,* and *Richard F. Heil, Jr.,* for relator. **Argued:** *Randall M. Comer.*

**On brief:** *Michael DeWine,* Attorney General, *Eric J. Tarbox,* and *Cheryl J. Nester* for respondent Industrial Commission of Ohio.

**On brief:** *Berger & Zavesky Co. L.P.A.,* and *Jeffrey D. Lojewski,* for respondent Roosevelt Harris. **Argued:** *Jeffrey D. Lojewski.*

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

BRUNNER, J.

{¶ 1} Relator, Benjamin Steel Co., Inc. ("Benjamin Steel"), commenced this original action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio ("the commission"), to vacate its order granting the application of

respondent, Roosevelt Harris, for an additional award for violation of a specific safety requirement ("VSSR") and to issue an order denying the application.

{¶ 2} Benjamin Steel asserts that there is no evidence on which the commission can base its VSSR award and, therefore, the commission erred in granting Harris' VSSR application and assessing a 50 percent penalty against Benjamin Steel. Benjamin Steel argues that the commission abused its discretion and erred as a matter of law in determining that Harris was engaged in "construction activity" within the meaning of Ohio Adm.Code 4123:1-3-01(A), such that the specific safety rule set forth at Ohio Adm.Code 4123:1-3-02 is applicable to Benjamin Steel.

{¶ 3} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate, who issued the appended decision, including findings of fact and conclusions of law. The magistrate found the commission had abused its discretion in applying the provisions of Ohio Adm.Code 4123:1-3 to Benjamin Steel. Based on these findings, the magistrate decided that Benjamin Steel's request for a writ of mandamus should be granted.

{¶ 4} Harris timely filed his objections to the magistrate's decision. Benjamin Steel timely filed its memorandum contra Harris' objections. The commission also filed a memorandum contra Harris' objections, conceding that the Staff Hearing Officer ("SHO") had improperly applied Ohio Adm.Code 4123:1-3-02(C)(1) and (5) to Benjamin Steel. The commission acknowledges that the magistrate correctly decided the issues which Harris raises anew in his objections to the magistrate's decision. The commission, through its memorandum, advocates for this Court to overrule Harris' objections and to grant the requested writ.

{¶ 5} Having examined the magistrate's decision, conducted an independent review of the record pursuant to Civ.R. 53, and undertaken due consideration of the objections, we overrule Harris' objections and adopt the magistrate's decision, including the findings of fact and conclusions of law, as our own.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 6} The facts in this matter are undisputed. Harris sustained a work-related injury on May 7, 2012, while in the performance of his normal job duties as a warehouseman at Benjamin Steel's plant in Mansfield. Two bundles of steel tubing that had been loaded onto a truck for shipment to another of Benjamin Steel's facilities fell onto

Harris' legs, resulting in an above-the-knee amputation on his right leg and a below-the-knee amputation on his left leg. Harris' claim was allowed.

{¶ 7}   On July 25, 2013, Harris filed an application for a VSSR award, alleging that Benjamin Steel had violated Ohio Adm.Code 4123:1-3-02(C)(1) and (5) of the construction safety regulations chapter, which resulted in his injury.   The Bureau of Workers' Compensation's ("BWC") Safety Violations Investigation Unit investigated Harris' allegations and issued a report stating in part that Benjamin Steel acknowledged Harris' injury occurred during the course of his regular job duties but asserted the injury was not due to a failure of any specific safety requirement.   The report contained Harris' statements concerning his employment history with Benjamin Steel and the circumstances of his injury.

{¶ 8}   On August 6, 2014, an SHO heard Harris' VSSR application. Benjamin Steel argued that the safety requirements of Ohio Adm.Code 4123:1-3 did not apply because it was not engaged in construction as its principal business.   The undisputed testimony adduced at the hearing supported Benjamin Steel's argument.   Following the August 6 hearing, the SHO issued an order finding that Ohio Adm.Code 4123:1-3 applied to Benjamin Steel's business and to Harris' work activities.   The SHO acknowledged that Benjamin Steel did not engage in construction activities as its principal business but, rather, was a "steel supplier service center" whose employees "actively process the steel used for construction purposes."  (Apr. 8, 2015 Stipulation of Evidence at 533.)  The SHO reasoned, therefore, that the specific safety requirements of Ohio Adm.Code 4123:3-02(C)(1) and (5) applied to Benjamin Steel.

{¶ 9}   Benjamin Steel's motion for rehearing was denied by another SHO by order mailed December 13, 2014. Benjamin Steel then filed this mandamus action on February 13, 2015.

{¶ 10} The magistrate's decision notes the finding of the commission's SHO that "[t]here is no dispute that Benjamin Steel does not engage in construction activities," but was a "steel supplier service center." (Stipulation of Evidence at 533.)  The magistrate found that it was an abuse of discretion for the SHO to find Benjamin Steel was in the construction business merely because it supplied steel to businesses engaged in construction activities. The magistrate also found it was an abuse of discretion for the SHO to find that Harris was

engaged in construction activity within the meaning of the scope provision of Ohio Adm.Code 4123:1-3-01(A). The magistrate concluded the SHO had abused her discretion in applying the specific safety rule to Benjamin Steel to find a VSSR. The magistrate recommends that this Court issue a writ of mandamus ordering the commission to vacate the August 6, 2014 order of its SHO that grants a VSSR award and to enter an order denying Harris' VSSR application. We agree.

## II. OBJECTIONS TO THE MAGISTRATE'S DECISION

{¶ 11} Harris presents two objections to the magistrate's decision:

[1.] The magistrate erred in determining that the Industrial Commission's SHO abused her discretion in concluding that Relator Benjamin Steel Company was engaged in "construction activity" within the meaning of the scope provision of Ohio Administrative Code 4123:1-3-01(A).

[2.] The magistrate erred in determining or implying that the Industrial Commission's SHO abused her discretion in concluding that the specific safety rule set forth in 4123:1-3-02(C)(5) is not applicable to relator Benjamin Steel Company.

Harris restates the arguments he presented in his merit brief, all of which the magistrate considered and rejected.

## III. LAW AND DISCUSSION

{¶ 12} To be entitled to relief in mandamus, Benjamin Steel must establish that it has a clear legal right to relief, that the commission has a clear legal duty to provide such relief, and that Benjamin Steel has no plain and adequate remedy in the ordinary course of law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983). To do this, Benjamin Steel must demonstrate that the commission abused its discretion and, "in this context, abuse of discretion has been repeatedly defined as a showing that the commission's decision was rendered without some evidence to support it." *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18, 20 (1987). To be successful in this mandamus action, Benjamin Steel must show that the commission's decision is not supported by some evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). Conversely, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion, and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Credibility and the weight to be given evidence are clearly within

the discretion of the commission as the factfinder.  *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 13} As the magistrate's decision clarifies, the relevant inquiry in this matter is whether Benjamin Steel was engaged in "construction activity" within the meaning of the "[s]cope" provision of Ohio Adm.Code 4123:1-3-01(A), such that the specific safety rule set forth at Ohio Adm.Code 4123:1-3-02 applied.  The magistrate's decision contains a comprehensive discussion of the statutory and case law regarding this issue.

{¶ 14} A specific safety requirement must clearly inform an employer of the legal obligations owed to employees.  *State ex rel. Holdosh v. Indus. Comm.*, 149 Ohio St. 179 (1948), syllabus; *State ex rel. Trydle v. Indus. Comm.*, 32 Ohio St.2d 257, 261 (1972) (citing and paraphrasing the *Holdosh* syllabus).  Because a VSSR finding results in a penalty, specific safety requirements must be strictly construed in the employer's favor.  *State ex rel. Burton v. Indus. Comm.*, 46 Ohio St.3d 170 (1989).  "The commission has the discretion to interpret its own rules; however, where the application of those rules to a unique factual situation gives rise to a patently illogical result, common sense should prevail."  *State ex rel. Harris v. Indus. Comm.*, 12 Ohio St.3d 152, 153 (1984).  A reviewing court must defer to the commission's interpretation when it relies on its own common sense to avoid an illogical result.  *State ex rel. Devore Roofing & Painting v. Indus. Comm.*, 101 Ohio St.3d 66, 2004-Ohio-23, ¶ 22; *recon. denied*, 101 Ohio St.3d 1491, 2004-Ohio-1293.

{¶ 15} Ohio Adm.Code 4123:1-3-01(A) covers "construction activities of employees whose employer engages in such work as its principal business."  Its stated purpose "is to provide safety for life, limb and health of employees engaged in construction activity."  *Id.*

{¶ 16} Ohio Adm.Code 4123:1-3-02(C) is captioned "[t]emporary storage."  Ohio Adm.Code 4123:1-3-02(C)(1) and (5), on which Harris bases his VSRR application, provide as follows:

> (1) All materials stored in tiers shall be stacked, racked, blocked, interlocked, or otherwise secured to prevent sliding, falling or collapse.
>
> * * *
>
> (5) Structural steel, poles, pipe, bar stock, and other cylindrical materials, unless racked, shall be stacked and blocked so as to prevent spreading or tilting.

{¶ 17} The magistrate determined there was no evidence on which the commission could rely to reach a reasoned decision that Benjamin Steel or that Harris was engaged in "construction activity" within the meaning of the scope provision of Ohio Adm.Code 4123:1-3-01(A) at the time of his injury.  It is undisputed that Benjamin Steel supplied steel to businesses engaged in manufacturing or construction but did not engage in construction activities as its principal business.  It also is undisputed that there was no construction site or activity at Benjamin Steel's Mansfield plant on the day Harris was injured.  The magistrate appropriately found that the commission's decision "impermissively expands the scope such that construction activity occurs when the employer merely supplies its product to a construction company and its employee is engaged in the delivery of the product to the construction company."  (App'x at ¶ 50.)  The magistrate concluded that upholding the commission's decision in this matter "would require this Court to rewrite the scope provision of Ohio Adm.Code 4123:1-3-01(A), something this court should not do." (App'x at ¶ 50.)  *State ex rel. Lamp v. J.A. Croson Co.*, 75 Ohio St.3d 77 (1996).

{¶ 18} Additionally, the commission acknowledges that its SHO improperly applied Ohio Adm.Code 4123:1-3-02(C)(1) and (5) to Benjamin Steel.  The commission concedes the magistrate correctly decided the issues raised by Harris.  Consequently, the commission urges this Court to overrule Harris' objections and to issue the requested writ.

## IV.  CONCLUSION

{¶ 19} Upon review of the magistrate's decision, an independent review of the record, and giving due consideration to Harris' objections and to the commission's concessions, we find the magistrate has properly stated the pertinent facts and applied the appropriate law.  Therefore, we overrule Harris' objections to the magistrate's decision and adopt the decision as our own, including the findings of facts and conclusions of law therein. In accordance with the magistrate's decision, the requested writ of mandamus ordering the commission to vacate the August 6, 2014 order of its SHO that grants a VSSR award and to enter an order denying Harris' VSSR application is granted.

*Objections overruled;*
*writ of mandamus granted.*

BROWN and SADLER, JJ., concur.

_____

APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel.<br>Benjamin Steel Co., Inc., | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | : | No.  15AP-107 |
| | : | |
| Industrial Commission of Ohio and<br>Roosevelt Harris, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

M A G I S T R A T E ' S   D E C I S I O N

**Rendered on April 25, 2016**

*Martin, Browne, Hull & Harper, P.L.L., Randall M. Comer,* and *Richard F. Heil, Jr.,* for relator.

*Michael DeWine,* **Attorney General, and** *Eric J. Tarbox,* **for respondent Industrial Commission of Ohio.**

*Berger & Zavesky Co. L.P.A.,* **and** *Jeffrey D. Lojewski,* **for respondent Roosevelt Harris.**

IN MANDAMUS

{¶ 20} In this original action, relator, Benjamin Steel Co., Inc. ("relator" or "Benjamin Steel"), requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order granting to respondent Roosevelt Harris ("claimant") his application for an additional award for violation of a specific safety requirement ("VSSR"), and to enter an order denying the application.

Findings of Fact:

{¶ 21}  1.  On May 7, 2012, while employed as a warehouseman for Benjamin Steel, two bundles of steel, each weighing 5,000 pounds, fell onto claimant's legs, resulting in an above the knee amputation on the right and a below the knee amputation on the left.

{¶ 22}  2.  The industrial claim (No. 12-820579) was allowed.

{¶ 23}  3.  On July 25, 2013, claimant filed an application for a VSSR award.  On his application, claimant alleged that relator had violated Ohio Adm.Code 4123:1-3-02(C)(1) and (5) and that the violation was the proximate cause of the injury.

{¶ 24}  4.  The VSSR application prompted an investigation by the Safety Violations Investigation Unit ("SVIU") of the Ohio Bureau of Workers' Compensation.

{¶ 25}  5.  On October 7, 2013, an SVIU special agent conducted an on-site investigation of the accident site at Benjamin Steel.  Relator's attorney was present during the on-site investigation.

{¶ 26}  6. On December 9, 2013, the SVIU special agent issued his report of investigation, consisting of 14 enumerated paragraphs.  The report states in part:

> [Three] The employer stated HARRIS worked as a warehouseman. He had been employed with the company for approximately 17 years and was hired October 11, 1993. On May 7, 2012 the date of HARRIS' injury, HARRIS worked at the Benjamin Steel facility located at 777 Benjamin Drive, Mansfield, Ohio. The employer stated HARRIS worked with co-workers and had loaded a truck with tubular steel. They were preparing to chain down the load in the truck.
>
> [Four] The employer stated HARRIS stood between a truck near the rear wheels of the cab and faced the driver side of the truck when a stack of steel tubing (2x3x24") tilted over and fell onto the backside of HARRIS' leg pinning him to the floor. The employer stated that nearby co-workers heard the commotion and ran to aid HARRIS. One of the employees used a nearby overhead crane to lift the fallen steel from HARRIS and then he was pulled away.
>
> * * *
>
> [Six] The employer acknowledged HARRIS' injury occurred during the course of his regular job duties but reiterated it was not due to a failure of any specific safety requirement. There

were no eyewitnesses to the occurrence of HARRIS's injury. The workers listed as witnesses were in proximity of the event and responded after the incident occurred.

[Seven] On September 26, 2013, Agent Hostin interviewed claimant HARRIS regarding the VSSR claim he filed due to a work related injury sustained while employed by Benjamin Steel Co. Inc. of Mansfield, Ohio. HARRIS stated that he was injured while in the performance of his normal job duties. Agent Hostin explained the procedures of the VSSR investigation and the Industrial Commission of Ohio. Agent Hostin interviewed HARRIS and obtained his statement in the form of an affidavit.

[Eight] HARRIS stated he obtained employment with Benjamin Steel Co., Inc., on October 11, 1993 and was hired as a warehouseman in the factory department. HARRIS stated he had worked for the company for 19 years and seven (7) months. HARRIS stated his job duties as a warehouseman consisted of pulling orders and loading and unloading mill inventory into trucks that pulled up to the warehouse's dock. HARRIS also stated he operated the overhead crane, fork lift and used grinders. He also transported and stacked inventory throughout the warehouse and ensured all orders were correct and secure. HARRIS also trained new and current personnel in warehouse operations in the plant. Other related job duties were performed as directed by his supervisor.

* * *

[Eleven] HARRIS stated that on May 7, 2012 the date of his injury, he was waiting for the shuttle truck driver to pull into the number #4 bay so he could load it. The shuttle truck was loaded everyday with steel tubing that may be needed at the employer's other facilities. HARRIS stated there were some co-workers that were loading a truck that was facing south toward the #4 bay door. They were loading it with steel tubing and once loaded it was chained down to secure it to the truck bed. HARRIS stated he was standing at the front near the gas tank of the truck on the driver side between the trailer and the bundle of steel that was stacked earlier that morning. HARRIS stated his back was turned to the bundles of steel when without warning, the bundles of steel fell, crushing both of his legs between the steel tubes.

[Twelve] HARRIS stated all the other co-workers were on the opposite side of the truck and were unable to see what had

happened. HARRIS stated one employee was on the trailer and another was inside the truck's cab.

{¶ 27} 7. On August 6, 2014, a staff hearing officer ("SHO") heard the VSSR application. The hearing was recorded and transcribed for the record.

{¶ 28} 8. During the hearing, Timothy F. Sinclair was called to testify by claimant's attorney on cross-examination. The following exchange was recorded:

Q. * * * And you're appearing here pursuant to Subpoena today; is that correct?

A. Yes, sir.

Q. You were, at one time, employed by Benjamin Steel; is that correct?

A. Yes, sir.

Q. And you were engaged or employed in, in -- by Benjamin Steel for over 16 years, correct?

A. Almost 16 years, sir.

Q. Okay. And all of that was at the Mansfield plant?

A. Yes, sir.

Q. They're headquartered in Springfield, Ohio?

A. Yes, sir.

Q. And they have plants at other locations in Ohio as well?

A. Mm, yes, sir.

Q. They're a supply chain steel services company; is that correct?

A. Steel service center, yes.

Q. Okay. And they supply steel to numerous vendors whether it's manufacturing or construction, correct?

A. Yes, sir.

Q. Okay. And you were the director of branch operations at that time --

A. Yes, sir.

Q. -- for the Mansfield Office, correct?

A. Yes, sir.

Q. So you had reporting to you, not only the plant superintendent, but also shift supervisors, correct?

A. Yes.

Q. Okay. And you were responsible for overseeing sales and, and the actual operation of the branch, correct?

A. Yes, sir.

(Tr. 20-21.)

{¶ 29} 9. During the hearing, Sinclair was called to testify by relator's attorney. The following exchange was recorded:

Q. * * * [W]hat is the nature of Benjamin Steel's business, what do they do?

A. We are considered a steel service center, we buy material from the mill and sell it to, ah, customers, our customer base, ah, either in the actual size that we purchase it from the mill at or we process it to a specific cut size or burn size or something along that nature.

Q. Okay. And Benjamin Steel's facility here in Mansfield and the other three locations, consist of warehouses to store the steel?

A. Yes, sir.

Q. And then office space for sales and for administration?

A. Yes, we also have the cutting facility.

Q. And the cutting facility which process the steel?

A. Mm.

Q. Benjamin Steel is not a construction company, is it?

A. No, sir.

MR. LOJEWSKI: Objection.

Q. Okay. Is Benjamin Steel engaged in construction activities?

A. No, sir.

Q. On the day in question, May 7th of 2012, was there even a construction site or any construction activity taking place on the property at the Mansfield facility?

A. No, sir.

(Tr. 35-36.)

{¶ 30} 10. During the hearing, claimant was called to testify by his counsel. The following exchange was recorded:

Q. When did you first start at Benjamin Steel?

A. Um, November 1993.

Q. Okay. And when you were hired in, what position were you hired in as?

A. As a warehouseman.

Q. Okay. And what were some of your job duties and responsibilities as a warehouseman?

A. I was pulling material and unloading mill trucks and loading our trucks also.

Q. Okay. And were you provided specific materials to assist you in loading and unloading and, and storing and stacking steel?

A. Like what, like a crane, with a crane?

Q. Sure, any type of equipment or materials?

A. We had a crane to, um, to lift stuff off the truck with.

(Tr. 105-06.)

{¶ 31} 11.  Following the August 6, 2014 hearing, the SHO issued an order finding that relator had violated Ohio Adm.Code 4123:1-3-02(C)(5).  Initially, the SHO found that Ohio Adm.Code Chapter 4123:1-3 pertaining to "Construction Safety" applied to relator's business and to claimant's work activities.  The SHO's order explains:

> The Employer's counsel contends the safety requirements set forth in 4123:1-3, the construction code, do not apply to Benjamin Steel for the reason that the Employer does not engage in construction as its principal business. The Employer's contention is not found persuasive. The Staff Hearing Officer finds the provisions outlined in 4123:1-3-02(C)(1) & (5) are found to cover and apply to the named Employer, Benjamin Steel Co., Inc. There is no dispute that Benjamin Steel does not engage in construction activities as its principal business. However, 4123:1-3-01 outlines the scope of the code section. The purpose of this portion of the Ohio Administrative Code Section is to provide safety for life, limb, and health of employees engaged in construction activity. The code also pertains to employees of other employers when the activities performed are in the course of new construction or substantial reconstruction of all or part of an existing structure. Benjamin Steel is a steel supplier service center. The company supplies steel to customers. The company consists of an administrative office and multiple warehouses. The Injured Worker was employed in the Mansfield warehouse. The employees in the warehouse cut and fabricate the steel to specific customer orders. This processing activity entails the use of lasers, saws and plasma cutters in order to properly fabricate the steel. Additionally, the company is a supplier of steel for new construction activities as well as customers engaged in construction activities.
>
> Moreover, 4123:1-3-01 covers employees of other employers when the activities are performed in the course of new construction or substantial reconstruction of all or part of an existing structure. The code does not cover employees engaged in activities described as the ordinary course of maintenance work. The Staff Hearing Officer finds that the Injured Worker was not engaged in ordinary maintenance work. The employees of Benjamin Steel actively process the steel used for construction purposes. The employees use multiple machinery to fabricate the steel. The heavy steel is then prepared for shipment in the warehouse for distribution. The Injured Worker used equipment in the warehouse to lift

and stack the steel, including a crane. His job duties required him to prepare the product for shipment. Thus, the Staff Hearing Officer finds the requirements outlined in Ohio Administrative Code 4123:3-02(C)(1) & (5) [sic] apply to the Employer under the claim.

{¶ 32} 12. Relator moved for rehearing pursuant to Ohio Adm.Code 4121-3-20(E).

{¶ 33} 13. On December 13, 2014, another SHO mailed an order denying rehearing.

{¶ 34} 14. On February 13, 2015, relator, Benjamin Steel Co., Inc., filed this mandamus action.

Conclusions of Law:

{¶ 35} The issue is whether the commission abused its discretion in determining that claimant was engaged in "construction activity" within the meaning of the "[s]cope" provision of Ohio Adm.Code 4123:1-3-01(A) such that the specific safety rule set forth at Ohio Adm.Code 4123:1-3-02 is applicable to relator.

{¶ 36} Finding that the commission abused its discretion in so determining, it is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.

{¶ 37} Ohio Adm.Code Chapter 4123:1-3 is captioned "Construction Safety." Thereunder, Ohio Adm.Code 4123:1-3-01(A) provides for the "[s]cope" of the chapter in several paragraphs. Pertinent here, are the first three paragraphs under Ohio Adm.Code 4123:1-3-01(A):

> The purpose of this chapter of the Administrative Code is to provide safety for life, limb and health of employees engaged in construction activity. In cases of practical difficulty or unnecessary hardship, the Ohio bureau of workers' compensation may grant exceptions from the literal requirements of this chapter to permit the use of other devices or methods when it is clearly evident the equivalent protection is thereby secured.
>
> Activities within the scope of this chapter, generally referred to herein as "construction", include the demolition, dismantling, excavation, construction, erection, alteration, repair, painting, decorating, glazing, cleaning, and pointing of buildings and other structures and the installation of machinery or equipment and all operations in connection therewith; the excavation, construction, alteration and repair of subways, sewers, tunnels, trenches, caissons, conduits,

> pipelines, roads and all operations pertaining thereto; the moving of buildings, signs, and other structures, and to the construction, alteration, repair, or removal of wharfs, piers, abutments, or any other construction, alteration, repair, or removal work carried on, in, about, or over water.
>
> This chapter covers construction activities of employees whose employer engages in such work as its principal business. It also covers employees of other employers when the activities are performed in the course of new construction or substantial reconstruction of all or part of an existing structure, as well as substantial demolition or razing of an existing structure, but does not cover employees of such other employers when the activities are performed in the ordinary course of maintenance work.

{¶ 38} Thereunder, Ohio Adm.Code 4123:1-3-02 is captioned "Temporary storage and disposal." Ohio Adm.Code 4123:1-3-02(C) is captioned "Temporary storage." Thereunder, the rule provides:

> (1) All materials stored in tiers shall be stacked, racked, blocked, interlocked, or otherwise secured to prevent sliding, falling or collapse.
>
> * * *
>
> (5) Structural steel, poles, pipe, bar stock, and other cylindrical materials, unless racked, shall be stacked and blocked so as to prevent spreading or tilting.

{¶ 39} A specific safety requirement must be "of a character plainly to apprise an employer of his legal obligations toward his employees." *State ex rel. Holdosh v. Indus. Comm.,* 149 Ohio St. 179 (1948), syllabus; *State ex rel. Trydle v. Indus. Comm.*, 32 Ohio St.2d 257, 261 (1972) (citing and paraphrasing the *Holdosh* syllabus).

{¶ 40} Because a VSSR results in a penalty, specific safety requirements must be strictly construed in the employer's favor. *State ex rel. Burton v. Indus. Comm.*, 46 Ohio St.3d 170 (1989).

{¶ 41} Under *State ex rel. Harris v. Indus. Comm.*, 12 Ohio St.3d 152, 153 (1984), "[t]he commission has the discretion to interpret its own rules; however, where the application of those rules to a unique factual situation gives rise to a patently illogical result, common sense should prevail."

{¶ 42} *State ex rel. Lamp v. J.A. Croson Co.*, 75 Ohio St.3d 77 (1996), is helpful because the court had occasion to review the commission's interpretation of the same rule at issue here, i.e., the scope provision of former Ohio Adm.Code 4121:1-3-01(A).

{¶ 43} Eddie Duane Lamp was employed as a plumber for J.A. Croson Company ("Croson"), a construction contractor. In 1988, Croson was involved in a construction project in Mansfield. The jobsite was at an off-highway location with restricted public access.

{¶ 44} For many months, Lamp had been transported to the site in a company van. He was not required to use company transportation, but chose to as a convenience. The van was equipped with only a driver and passenger seat. Employees riding in the van road on unsecured benches in the back. No restraining devices were provided.

{¶ 45} Construction materials were transported with the employees. These include both full and empty acetylene bottles, tool boxes, and plumbing fittings.

{¶ 46} One morning in March 1988, Lamp and several co-workers were traveling on an interstate to the jobsite when the van hit a patch of ice and flipped. Lamp was injured and a claim was allowed. He later applied for a VSSR award.

{¶ 47} The commission denied the VSSR application on grounds that Lamp was not engaged in construction activity at the time of the accident and therefore the specific safety rule alleged to have been violated did not apply to Lamp's situation. In interpreting former Ohio Adm.Code 4121:1-3-01(A), the commission held that, at the time of the accident, Lamp was "only preparing to engage in construction activity by the transporting of materials to the jobsite. Construction activity must occur at the jobsite itself." *Id.* at 79.

{¶ 48} In *Lamp,* the Supreme Court of Ohio disagreed with the commission's conclusion that Lamp was not engaged in construction activity. The court explained:

> While we are normally obligated to defer to the commission's interpretation of its own rules, we will not defer when the commission's interpretation implicitly adds language to the text of the rule.
>
> In examining the facts surrounding the claimant's injury, the commission did not allow the claimant's VSSR claim because the commission found the transportation of construction materials from the contractor's off-site premises to a construction site to be a preparatory-activity and not a construction activity as defined in Ohio Adm.Code 4121:1-3-

> 01. However, this preparatory-activity exception to the scope of rule appears nowhere in the text of the rule.
>
> In its definition of construction activities Ohio Adm.Code 4121:1-3-01 does not focus on whether the employment activity is preparatory. Instead, the rule focuses on whether the employment activity involves "demolition, dismantling, excavation, construction, [and] erection * * * of buildings and other structures and the installation of machinery or equipment," or any activity that is performed "in connection therewith." Agreeing with the commission's conclusion that Ohio Adm. Code 4121:1-3-01(A) excludes preparatory activities would require us to rewrite the rule and add a preparatory-activities exception. However, it is not our role to rewrite the commission's rules. Only the Administrator of Workers' Compensation or the General Assembly may rewrite safety requirements. R.C. 4121.13. and 4121.47.

*Id.* at 79-80.

{¶ 49} The *Lamp* court issued a writ of mandamus ordering the commission to vacate its order and to enter a new order granting Lamp's VSSR application.

{¶ 50} Just as in *Lamp,* to uphold the commission's decision here would require this court to rewrite the scope provision of Ohio Adm.Code 4123:1-3-01(A), something this court should not do. The commission's decision here, in effect, impermissively expands the scope such that construction activity occurs when the employer merely supplies its product to a construction company and its employee is engaged in the delivery of the product to the construction company.

{¶ 51} There is no evidence on which the commission can rely to reach a reasoned determination that claimant was engaged in "construction activity" within the meaning of the scope provision of the Ohio Adm.Code 4123:1-3-01(A).

{¶ 52} The necessary first step for the commission in rendering its analysis was to identify the business activities that may be subject to the argument as to whether the employees of relator engage in construction activity.

{¶ 53} There is no dispute that Benjamin Steel runs a so-called "cutting facility" on the premises of its Mansfield location where steel it has purchased from the mill is fabricated and cut in response to demands of its customers. The fabrication process, as indicated by the SHO, entails the use of lasers, saws, and plasma cutters. The claimant

himself did not work in the cutting facility.  Rather, claimant worked in the warehouse where the steel was temporarily stored and prepared for shipment to customers.

{¶ 54} In reaching her conclusion that Benjamin Steel is in the construction business, the SHO relied on two undisputed facts:  (1) that Benjamin Steel runs a "cutting facility" where steel is fabricated, and (2) Benjamin Steel supplies the fabricated steel to customers that are undisputedly engaged in the construction industry.

{¶ 55} Significantly, the SHO does not suggest that the running of a cutting facility alone compels the conclusion that Benjamin Steel is engaged in the construction business.  Thus, the SHO's conclusion is premised upon the fact that relator's customers are engaged in the construction industry.

{¶ 56} Clearly, that relator supplies its steel products to the construction industry does not put relator in the construction business.  That point is descriptively made by relator in its brief:

> [I]f supplying products, which may be used in construction, subjects an employer to the construction safety regulations, as the SHO holds, then Home Depot, Lowe's, Sears, Sherwin-Williams, every hardware store, and untold more retailers, wholesalers and distributors in Ohio are subject to the construction safety regulations.

(Relator's Brief, 9-10.)

{¶ 57} The SHO then turns her focus toward claimant's job duties.  The SHO points out that, in preparing steel for shipment, claimant used warehouse equipment to lift and stack the steel.  A crane was sometimes used.  However, the SHO does not suggest that claimant's activities can be characterized as construction activity in the absence of shipping the steel to customers who are undisputedly engaged in the construction business.

{¶ 58} It is fallacy for the SHO to conclude that supplying fabricated steel to the construction industry puts relator in the construction business.

{¶ 59} Here, while the SHO did not abuse her discretion in presenting the basic facts subject to discussion, she did abuse her discretion in the reasoning used to reach her conclusion that claimant was engaged in "construction activity" within the meaning of the scope provision of Ohio Adm.Code 4123:1-3-01(A).

{¶ 60} Again, there is no evidence on which the commission can rely to support a determination that claimant was engaged in "construction activity" within the meaning of the scope provision.

{¶ 61} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate the August 6, 2014 order of its SHO that grants a VSSR award, and to enter an order denying the VSSR application.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).