[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ohio Paperboard v. Indus. Comm.*, Slip Opinion No. 2017-Ohio-9233.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-9233

THE STATE EX REL. OHIO PAPERBOARD, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO, ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ohio Paperboard v. Indus. Comm.*, Slip Opinion No. 2017-Ohio-9233.]

*Workers' compensation—Violation of a specific safety requirement ("VSSR")— Claimant's failure to follow employer's safety policy was proximate cause of injury—Writ of mandamus granted ordering Industrial Commission to vacate its order and issue new order denying application for VSSR award.*

(No. 2016-1575—Submitted September 26, 2017—Decided December 28, 2017.)

APPEAL from the Court of Appeals for Franklin County, No. 15AP-871, 2016-Ohio-7005.

_____

**Per Curiam.**

{¶ 1} Appellant, Ohio Paperboard ("OP"), challenges appellee Industrial Commission's award of additional compensation for violation of a specific safety

requirement ("VSSR"). The commission determined that OP violated Ohio Adm.Code 4123:1-5-05(C)(2), (C)(4), and (D)(1), which require guards and emergency-shut-off buttons on power-driven conveyors, and that the violations were the proximate cause of the injuries to appellee John S. Ruckman.

{¶ 2} For the reasons that follow, we reverse the judgment of the court of appeals and issue a writ of mandamus ordering the commission to vacate its order and to issue a new order denying the application for an additional award for VSSR.

{¶ 3} OP operates a recycled-paper mill. The company receives bales of recycled paper bound with wire, each bale weighing approximately 900 pounds. The bales are loaded onto a conveyor that transports them into a pulper, where they are shredded. As the bales are transported to the pulper, an overhead saw cuts the bailing wire. Most of the cut wires end up in the pulper, but some get wrapped around the shafts and gears of the conveyor.

{¶ 4} Routine preventive maintenance is performed on the conveyor for several hours every Monday. The weekly maintenance includes removing pieces of baling wire caught in the conveyor. On the day of the accident, Ruckman and a coworker, Mark Horvath, were assigned to do the maintenance work. First, the conveyor operator, John Smith, who worked inside a control shack, ran the conveyor until all the bales had been transferred to the pulper, then he switched the machine from operational mode to maintenance mode. At that point, Ruckman and Horvath began their maintenance duties. They followed the company's required lock-out/tag-out procedures and shut down the machine. They also removed a guard in order to access and remove wires wrapped around the chains and sprockets.

{¶ 5} At some point, Horvath left the area to get oil for the conveyor, and Ruckman, in an attempt to remove wires that were stuck underneath a gear, unlocked and activated the conveyor and then reached in to grab the wires. The

moving conveyor caught his hand and pulled it into the machine, crushing it. Ruckman was unable to reach the emergency-stop button to stop the machine.

{¶ 6} Ruckman's workers' compensation claim was allowed for the following conditions: left-hand amputation and replantation, major depressive disorder, and total loss of use of the left hand.

{¶ 7} He filed an application for an additional award for VSSR, alleging that OP had violated Ohio Adm.Code 4123:1-5-05(C)(2), (C)(4), and (D)(1), which require guards and emergency-shut-off buttons on power-driven conveyors, and that those violations were the proximate cause of his injuries.

{¶ 8} Following a hearing, a staff hearing officer concluded that Ruckman's injury was a result of his employer's failure to comply with those three specific safety regulations. The hearing officer rejected OP's argument that Ruckman's injury was caused by his unilateral negligence in failing to follow the safety procedures that his employer required. The hearing officer awarded an additional award of compensation in the amount of 40 percent of the maximum weekly rate.

{¶ 9} OP filed a complaint for a writ of mandamus alleging that the commission's order was erroneous, contrary to law, and unsupported by evidence in the record. The court of appeals denied OP's request for a writ.

{¶ 10} OP's direct appeal is now before the court.

{¶ 11} The three specific safety rules ("SSRs") at issue apply to power-driven conveyors. The first is set forth in Ohio Adm.Code 4123:1-5-05(C)(2), which states:

> All conveyors, where exposed to contact, shall be equipped with means to disengage them from their power supply at such points of contact.

The second is set forth in Ohio Adm.Code 4123:1-5-05(C)(4), which states:

3

Pinch points created by travel of conveyor belts over or around end, drive and snubber, or take-up pulleys of chain conveyors running over sprocket wheels shall be guarded or a means shall be provided at the pinch point to disengage the belt or chain from the source of power.

The third is set forth in Ohio Adm.Code 4123:1-5-05(D), which states:

Means shall be provided at each machine, within easy reach of the operator, for disengaging it from its power supply.

{¶ 12} In order to trigger the mandates of the SSRs at issue, the claimant must be an "operator" of the conveyor. An "operator" is defined as "any employee assigned or authorized to work at the specific equipment." Ohio Adm.Code 4123:1-5-01(B)(92). In addition, the conveyor must be "exposed to contact," meaning that its location "during the course of operation, is accessible to an employee in performance of the employee's regular or assigned duty," Ohio Adm.Code 4123:1-5-01(B)(47).

{¶ 13} The commission concluded that Ruckman was an operator, because he was assigned to work on the conveyor as a maintenance worker. It also concluded that he "was exposed, and his injury occurred, at a pinch point."

{¶ 14} OP argues that there is no evidence to support the commission's finding that Ruckman was an operator. It further argues that he was not transformed into an operator when he disregarded OP's maintenance protocol by turning on the conveyor and reaching toward an unguarded hazard. OP points out that both Ruckman and Gary Blank, his supervisor, testified that Ruckman was a mechanic whose duties were to be performed while all power was shut down so that he could

4

remove a protective guard without the risk of exposure to a pinch point. OP asserts that common sense dictates that the SSRs do not apply to a maintenance mechanic working on a machine without power.

{¶ 15} The definition of "operator" is broad and requires only that one be "assigned or authorized to work at the specific equipment." Ohio Adm.Code 4123:1-5-01(B)(92). It was undisputed that Ruckman was assigned to work at the conveyor as a maintenance mechanic. Because the commission had some evidence to support its decision, it was not an abuse of discretion for the commission to categorize Ruckman as an operator for purposes of the SSRs. *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18, 20, 508 N.E.2d 936 (1987) (an abuse of discretion occurs when the record contains no evidence to support the commission's findings).

{¶ 16} Next, OP asserts that it complied with the SSRs and that its assertion is supported by evidence in the record that the conveyor had emergency-stop buttons located within reach of the operator in the control shack and at the front and back of the conveyor and that the pinch points were guarded to prevent contact during normal operation of the conveyor. OP maintains that the only time the guards were not in place was while the machine was undergoing maintenance and during that time, the safety regulations did not apply, because the conveyor was shut down.

{¶ 17} We agree. The SSRs required the employer to provide a means to disengage the conveyor from power and to provide guards for pinch points. The record contains evidence that OP did so by providing an emergency-stop button within reach of the operator during normal operations and providing guards around the pinch points during normal operations. When the machine was undergoing maintenance, OP's protocol required that the conveyor be shut down and locked so there was no risk of contact with an operational pinch point. It logically follows that the rules intended to protect the employees while the conveyor is operating to

transport bales do not apply during maintenance activities when there is no power to the conveyor.

{¶ 18} The commission's order acknowledged that following OP's protocol, Ruckman and his coworker shut down power to the machine before starting to remove the wires, but the commission's analysis of the SSRs failed to take into account that power was disengaged during preventive maintenance. Thus, even if Ruckman was considered an operator, he had access to the unguarded pinch point only when he was performing maintenance, when the conveyor was shut down and locked. A machine that is accessible to an employee only when operations have stopped is not accessible to the employee "during the course of operation," Ohio Adm.Code 4123:1-5-01(B)(47), and it is not made so merely because the conveyor subsequently starts running, *State ex rel. Ford v. Indus. Comm.*, 67 Ohio St.3d 121, 123, 616 N.E.2d 228 (1993).

{¶ 19} Finally, OP argues that Ruckman's actions—removing the lock and pulling out the emergency-stop button to energize the conveyor and then reaching into the unguarded pinch-point hazard—violated his duty to follow company safety protocol. According to OP, it trained its mechanics to disable the conveyor and required them to follow lock-out/tag-out procedures during repair and maintenance activities. *See* Ohio Adm.Code 4123:1-5-05(D)(2). OP maintains that Ruckman was injured as a result of his failing to follow the safety policy and that therefore a VSSR award should not have been granted.

{¶ 20} The critical issue in a VSSR claim is always whether the employer complied with the SSR. *State ex rel. Quality Tower Serv., Inc. v. Indus. Comm.*, 88 Ohio St.3d 190, 193, 724 N.E.2d 778 (2000). A VSSR award is intended to penalize employers for failing to comply with SSRs and only those acts within the employer's control should serve as the basis for establishing a VSSR. *State ex rel. Frank Brown & Sons, Inc. v. Indus. Comm.*, 37 Ohio St.3d 162, 164, 524 N.E.2d 482 (1988).

**{¶ 21}** Here, the record contains evidence that OP complied with the SSRs at issue and that Ruckman was required to shut down the machine to perform preventive maintenance.  OP presented evidence that it provided training on its safety policy that the conveyor must be locked out and tagged out before maintenance is performed on it and that Ruckman's failure to follow OP's policy was the proximate cause of his injury.  Thus, the commission abused its discretion when it rejected OP's argument that Ruckman's unilateral negligence exposed him to the hazards that caused his injury.

**{¶ 22}** Based on the foregoing, we conclude that the commission's decision was not supported by evidence in the record and that it abused its discretion in granting a VSSR award.  Consequently, we reverse the judgment of the court of appeals and issue a writ of mandamus ordering the commission to vacate its order and to issue a new order denying Ruckman's application for an additional award for VSSR.

Judgment reversed

and writ granted.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, FRENCH, and FISCHER, JJ., concur.

DEWINE, J., concurs in judgment only.

O'NEILL, J., dissents.

_____

Ice Miller, L.L.P., and Corey Crognale, for appellant.

Michael DeWine, Attorney General, and John R. Smart, Assistant Attorney General, for appellee Industrial Commission.

Larrimer & Larrimer, and Thomas L. Reitz, for appellee John S. Ruckman.

_____