[Cite as *State ex rel. Allen Industries, Inc. v. Indus. Comm.*, 2024-Ohio-5992.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Allen Industries Inc., | : | |
| Relator, | : | |
| | : | No. 23AP-469 |
| v. | : | |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

D E C I S I O N

Rendered on December 23, 2024

**On brief:** *Taft, Stettinius & Hollister LLP*, and *Andrew R. Thaler*, for relator.

**On brief:** *Dave Yost*, Attorney General, and *John Smart*, for respondent Industrial Commission of Ohio.

**On brief:** *Schaffer and Associates LPA*, and *Thomas J. Schaffer*, for respondent Lewis M. Lands.

IN MANDAMUS
ON OBJECTIONS TO MAGISTRATE'S DECISION

BOGGS, J.

{¶ 1} Relator, Allen Industries Inc. ("Allen Industries") seeks a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission") to vacate its order granting the application of respondent, Lewis M. Lands for an additional award of compensation based on a violation of a specific safety requirement ("VSSR") and to either order the commission to deny Lands's VSSR application or to grant Allen Industries' request for a rehearing.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, the court referred this matter to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate concludes that Allen

Industries has not demonstrated a clear legal right to the requested relief or that the commission is under a clear legal duty to provide it, and he therefore recommends that this court deny Allen Industries' request for a writ of mandamus.

{¶ 3} Allen Industries has filed objections to the magistrate's decision. In its objections, Allen Industries first contends that the magistrate erred in determining that Lands's injury falls within the scope of the specific safety requirement set out in Ohio Adm.Code 4123:1-3-13(D)(1). It next argues that the magistrate erred by finding no irreconcilable conflict between Ohio Adm.Code 4123:1-3-13(D)(1) and Mich. Adm.Code 408.40901.

{¶ 4} In ruling on Allen Industries' objections, we must independently review the record and the magistrate's decision to ascertain whether "the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). As Allen Industries does not object to the magistrate's factual findings, and an independent review of those findings reveals no error, we adopt the magistrate's findings of fact as our own. Nevertheless, for purposes of our discussion of Allen Industries' arguments regarding the magistrate's conclusions of law, we briefly summarize the relevant facts.

## I. FACTS AND PROCEDURAL BACKGROUND

{¶ 5} On October 30, 2018, Lands was injured in the course of and arising out of his employment as a sign installer with Allen Industries. Lands and a coworker were installing a sign at a Meijer store in Fremont, Michigan, and Lands was welding at the edge of a trench that had been created by hydro excavation when he was injured. In the Bureau of Workers' Compensation ("BWC") first report of an injury, occupational disease or death form, Lands described the incident that resulted in his injury as follows: "Welding at ground level on steel poles. Kneeling on ground [and] loose soil gave way leading to [Lands] slipping head first into a [seven foot] hole." (Stip. at 9.) Lands's workers compensation claim was allowed for various conditions, as set out in the magistrate's decision.

{¶ 6} On September 14, 2020, Lands applied for an additional award for VSSR, claiming that Allen Industries had violated a specific safety requirement stated in Ohio Adm.Code 4123:1-3-13. In that application, Lands again described how his injury occurred: "Injured worker was welding on steel poles at ground level near a footer hole for Meijer job

site. He was kneeling on the ground welding when loose soil gave way causing him to fall head first into the bottom of the [seven foot] footer hole." (Stip. at 1.)

{¶ 7} Following an investigation, the BWC's Safety Violations Unit released a report, in which the investigator relayed Allen Industries' description of the incident: "Lands was in the process of welding an angle to a steel pole in the excavation when the ground gave way beneath him and he slid into the excavation. * * * The employer described the excavation at the jobsite as being 2' in diameter and 5'4" deep, which by definition would have been considered a trench." (Stip. at 4.) In his own statement, which was attached to the report, Lands stated that the trench was at least seven feet deep and between five and six feet wide. Lands reported there was no shoring or bracing in the trench or on site. He stated that, when he fell into the trench, he was "buried upside down by the dirt and receiving an electrical shock from the welder lead" for about two minutes before his coworker shut off the electricity to the welder and placed a ladder into the hole for Lands to climb out. (Stip. at 7.)

{¶ 8} A commission staff hearing officer ("SHO"), having previously denied Lands's application for a VSSR award, issued an order on rehearing granting Lands's application. The SHO determined that the specific safety requirement in Ohio Adm.Code 4123:1-3-13(D)(1) applies to the facts of this claim. Ohio Adm.Code 4123:1-3-13(D)(1) provides, "The exposed face of all trenches more than five feet high shall be shored, laid back to a stable slope, or some other equivalent means of protection shall be provided where employees may be exposed to moving ground or cave-ins." The SHO concluded that application of Ohio Adm.Code 4123:1-3-13(D)(1) is not limited to situations in which a worker is fully inside the trench, that Allen Industries did not prove the protection required by that rule, and that the violation was the proximate cause of Lands's injuries. (Stip. at 175-76.) Additionally, the SHO rejected Allen Industries' argument that Mich. Adm.Code 408.40901 irreconcilably conflicts with and therefore precludes the application of Ohio Adm.Code 4123:1-3-13(D)(1). Having found that Allen Industries violated the specific safety requirement in Ohio Adm.Code 4123:1-3-13(D)(1) and that the violation was the proximate cause of Lands's injuries, the SHO ordered an additional award of compensation to Lands in the amount of 40 percent of the maximum weekly rate. The commission denied Allen Industries' motion for a rehearing.

## II. ALLEN INDUSTRIES' MANDAMUS CLAIM

{¶ 9}   On August 2, 2023, Allen Industries commenced this action for a writ of mandamus.  Allen Industries seeks a writ of mandamus ordering the commission to vacate its order granting Lands's VSSR application and either ordering the commission to deny Lands's application or granting Allen Industries' request for a rehearing.

{¶ 10} A writ of mandamus will issue when "there is a legal basis to compel the commission to perform its duties under the law or when the commission has abused its discretion in carrying out its duties." *State ex rel. Cassens Corp. v. Indus. Comm.*, 174 Ohio St.3d 414, 2024-Ohio-526, ¶ 10, citing *State ex rel. Gen. Motors Corp. v. Indus. Comm.*, 117 Ohio St.3d 480, 2008-Ohio-1593, ¶ 9.  To be entitled to a writ of mandamus, Allen Industries must demonstrate by clear and convincing evidence that it has a clear legal right to the relief sought, that the commission has a clear legal duty to provide that relief, and that it lacks an adequate remedy in the ordinary course of the law.  *See State ex rel. Poneris v. Indus. Comm.*, 10th Dist. No. 05AP-111, 2005-Ohio-6208, ¶ 11, citing *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).  Generally, a clear legal right exists when the relator establishes that the commission abused its discretion by entering an order that is not supported by "some evidence" in the record.  *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76, 78-79 (1986).  Mandamus may also issue "if the commission has incorrectly interpreted Ohio law."  *Cassens Corp.* at ¶ 10, citing *State ex rel. Gassmann v. Indus. Comm.*, 41 Ohio St.2d 64, 65 (1975).

{¶ 11}  The magistrate concluded that Allen Industries failed to demonstrate a clear legal right to the relief it requests and that the commission has a clear legal duty to provide that relief.  The magistrate rejected Allen Industries' argument that "a plain reading of [Ohio Adm.Code 4123:1-3-13(D)(1)] requires shoring only when employees are working within trenches – not outside of them." (Allen Industries' Brief at 9.)  Applying the plain language of the rule, the magistrate found that it applies when "employees may be exposed to moving ground or cave-ins" and does not require the employee to be inside a trench. Ohio Adm.Code 4123:1-3-13(D)(1).  The magistrate concluded that the SHO properly found the rule applicable, because Lands was exposed to moving ground or cave-ins.  Further, the magistrate rejected Allen Industries' argument that the commission abused its discretion

by finding no irreconcilable conflict between Ohio Adm.Code 4123:1-3-13(D)(1) and Mich. Adm.Code 408.40901.

### III. ANALYSIS

{¶ 12} In its objections, Allen Industries contends that the magistrate erred (1) by determining that Ohio Adm.Code 4123:1-3-13(D)(1) applies to Lands's claim, and (2) by determining that Ohio Adm.Code 4123:1-3-13(D)(1) does not irreconcilably conflict with Mich Adm.Code 408.40901.

### A. First objection

{¶ 13} "To establish entitlement to a VSSR award, a claimant must show that a specific safety requirement * * * is applicable to the employer, that the employer violated that [specific safety requirement], and that the violation proximately caused the [claimant's] injury." *State ex rel. Richmond v. Indus. Comm.*, 139 Ohio St.2d 157, 2014-Ohio-1604, ¶ 17. Allen Industries' first objection focuses on the applicability of Ohio Adm.Code 4123:1-3-13(D)(1), which states, "[t]he exposed faces of all trenches more than five feet high shall be shored, laid back to a stable slope, or some other equivalent means of protection shall be provided where employees may be exposed to moving ground or cave-ins." As it did unsuccessfully before both the SHO and the magistrate, Allen Industries maintains that the rule does not unambiguously apply to individuals working outside of a trench.

{¶ 14} " 'The [commission's] rules for specific safety requirements have the effect of legislative enactments" and are "subject to the ordinary rules of statutory construction.' " *State ex rel. Parks v. Indus. Comm.*, 85 Ohio St.3d 22, 25 (1999), quoting *State ex rel. Miller Plumbing Co. v. Indus. Comm.*, 149 Ohio St. 493, 496-97 (1948). When the language of a statute or administrative rule is unambiguous on its face, we apply it as written, without resort to rules of statutory interpretation or considerations of public policy. *Zumwalde v. Madeira & Indian Hill Joint Fire Dist.*, 128 Ohio St.3d 492, 2011-Ohio-1603, ¶ 23-24, 26; *Lake Hosp. Sys., Inc. v. Ohio Ins. Guar. Assn.*, 69 Ohio St.3d 521, 524 (1994). A court may employ rules for construing ambiguous language in a statute or administrative rule "only when a definitive meaning proves elusive, despite a thorough and objective examination of the statutory language." *Ohio Neighborhood Fin., Inc. v. Scott*, 139 Ohio St.3d 536, 2014-Ohio-2440, ¶ 23, citing *State v. Porterfield*, 106 Ohio St.3d 5, 2005-Ohio-3095, ¶ 11.

" 'Otherwise, allegations of ambiguity become self-fulfilling.' " *Id.* "To construe or interpret what is already plain is not interpretation but legislation, which is not the function of courts." *Thompson Elec. v. Bank One*, 37 Ohio St.3d 259, 264 (1988).

{¶ 15} Because an award for a VSSR is a penalty against the employer, specific safety requirements "must be strictly construed, and all reasonable doubts concerning the interpretation of the safety standard are to be construed against its applicability to the employer." *State ex rel. Burton v. Indus. Comm.*, 46 Ohio St.3d 170, 172 (1989). Yet we may not create ambiguity under the guise of strict construction when no ambiguity exists under a plain reading of the safety requirement. *See State ex rel. Devore Roofing & Painting v. Indus. Comm.*, 101 Ohio St.3d 66, 2004-Ohio-23, ¶ 20 (rejecting call to strictly construe unambiguously defined term in a safety rule, stating, "it would be entirely inappropriate for this court to construe that term at all").

{¶ 16} Ohio Adm.Code 4123:1-3-13(D)(1) requires an employer to shore or to lay back to a stable slope the exposed faces of trenches more than five feet high or to provide some other equivalent means of protection for "employees [who] may be exposed to moving ground or cave-ins." Allen Industries contends that an individual cannot be "exposed to moving ground or cave-ins" with respect to a trench unless the individual is *inside* the trench, but the facts of this case lay bare the flaw in that argument. Lands reported that he was welding steel uprights to the sign pole that had been placed in the trench when "the ground gave way under me and I fell head-first into the bottom of the hole. Dirt fell into the hole on top of me along with the electrical lead for the welder." (Stip. at 7.) There is no question that Lands was exposed to moving ground along the edge of the trench; it is what caused him to fall into the trench as the ground "gave way" or caved-in beneath him.

{¶ 17} Nothing in the text of Ohio Adm.Code 4123:1-3-13(D)(1) suggests that the rule is intended to protect only a worker who is subjected to moving ground or cave-ins while *in* a trench. Nor do we find the language of Ohio Adm.Code 4123:1-3-13(D)(1) ambiguous, so as to require us to strictly construe doubts regarding its applicability in favor of Allen Industries. Ohio Adm.Code 4123:1-3-13(D)(1) applies broadly to situations in which "employees may be exposed to moving ground or cave-ins," and it does not distinguish between employees who are exposed to moving ground or cave-ins while inside the trench and those who, like Lands, are exposed to moving ground or cave-ins while on

ground level at the edge of the trench. Only by adding words to the rule could this court conclude, as Allen Industries asks us to, that the rule applies only when an employee is exposed to moving ground or cave-ins *inside* the trench. In construing a statute or administrative rule, "we may not add or delete words." *State v. Hughes*, 86 Ohio St.3d 424, 427 (1999), citing *State ex rel. Sears, Roebuck & Co. v. Indus. Comm.*, 52 Ohio St.3d 144, 148 (1990). *See also State ex rel. Devore Roofing & Painting*, 2004-Ohio-23, at ¶ 20 ("We can no more adopt an interpretation that essentially deletes language from the text of a safety rule than we can accept an 'interpretation [that] implicitly adds language to the text of the rule.' "), quoting *State ex rel. Lamp v. J.A. Croson Co.*, 75 Ohio St.3d 77, 80 (1996).

{¶ 18} As the magistrate correctly recognized, the drafters of Ohio Adm.Code 4123:1-3-13 knew how to limit the application of a safety requirement to workers who are inside a trench. For example, Ohio Adm.Code 4123:1-3-13(D)(2) requires, "[s]ides of trenches in unstable or soft material, five feet or more in depth, shall be shored, sheeted, braced, sloped, or otherwise supported by means of sufficient strength *to protect the employees working within them*." (Emphasis added.) Similarly, Ohio Adm.Code 4123:1-3-13(D)(6) provides, "*When employees are required to be in trenches* four feet deep or more, an adequate means of exit, such as a ladder or steps, shall be provided and located so as to require no more than twenty-five feet of lateral travel." (Emphasis added.) Unlike those sections, however, other sections of Ohio Adm.Code 4123:1-3-13, like section (D)(1), do not include language limiting their application to employees who are in a trench. We may not imply such language where it does not appear in the text of the rule.

{¶ 19} Because the plain and unambiguous language of Ohio Adm.Code 4123:1-3-13(D)(1) does not limit its application to employees working in trenches, we overrule Allen Industries' first objection to the magistrate's decision.

## B. Second objection

{¶ 20} In its second objection to the magistrate's decision, Allen Industries challenges the magistrate's determination that there is not an irreconcilable conflict between Ohio Adm.Code 4123:1-3-13(D)(1) and Mich. Adm.Code 408.40901 that would preclude application of the Ohio rule to this incident, which occurred in Michigan.

{¶ 21} "Ohio specific safety requirements apply extraterritorially unless the relevant requirement irreconcilably conflicts with an out-of-state safety regulation." *State ex rel.*

*Winzeler Excavating Co. v. Indus. Comm.*, 63 Ohio St.3d 290, 293 (1992), citing *State ex rel. Bailey v. Krise*, 18 Ohio St.2d 191 (1969).  In other words, " 'Ohio will not sanction performance contrary to the law of the place of performance.' "  *Id.*, quoting *Bailey* at 197.  The question here is whether Michigan law imposed a safety requirement that "would have prevented compliance with conduct prescribed by Ohio for this employment." *Id.*

{¶ 22}  At the time of Lands's injury, Mich. Adm.Code 408.40901(1) provided, "This part pertains to the digging of excavations and trenches *which an employee is required to enter* and the supporting systems used on construction operations."  (Emphasis added.) Thus, unlike Ohio Adm.Code 4123:1-3-13(D)(1), the applicable Michigan rules identified by Allen Industries apply only to the digging of excavations and trenches that an employee is required to enter.  As determined above, Ohio Adm.Code 4123:1-3-13(D)(1) applies when an employee is exposed to moving ground or cave-ins, whether or not the employee enters a trench or excavation.  Compliance with Ohio's requirement to provide broader protection for all employees who are exposed to moving ground or cave-ins does not preclude an employer from also complying with the Michigan rules when an employee is required to enter a trench.  Therefore, we conclude that the magistrate appropriately concluded there is no irreconcilable conflict between Ohio Adm.Code 4123:1-3-13(D)(1) and Mich Adm.Code 408.40901, and we overrule Allen Industries' second objection.

## IV.  CONCLUSION

{¶ 23}  Having overruled both of Allen Industries' objections and discerning no error in the magistrate's decision, we adopt that decision as our own and deny Allen Industries' request for a writ of mandamus.

*Objections overruled,*
*and writ denied.*

DORRIAN and JAMISON, JJ., concur.

———————————

# **APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Allen Industries Inc., | : | |
| Relator, | : | |
| v. | : | No. 23AP-469 |
| | : | |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |
| | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on June 14, 2024

*Taft Stettinius & Hollister LLP,* and *Andrew R. Thaler*, for relator.

*Dave Yost,* Attorney General, and *John Smart,* for respondent Industrial Commission of Ohio.

*Schaffer and Associates LPA,* and *Thomas J. Schaffer*, for respondent Lewis M. Lands.

IN MANDAMUS

{¶ 24} Relator Allen Industries Inc. ("Allen Industries") seeks a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order granting the application of respondent Lewis M. Lands for an additional award based on a violation of a specific safety requirement ("VSSR"). Allen Industries additionally requests that this court order the commission to deny Lands's VSSR application or to grant Allen Industries' request for a rehearing.

## I. Findings of Fact

{¶ 25} 1. Lands was injured on October 30, 2018 in the course of and arising out of his employment with Allen Industries. On that date, Lands and Andrew Hatfield, who were employed as sign installers for Allen Industries, were installing a sign at a Meijer store in Fremont, Michigan. At the site of the installation, a trench had been created using hydro excavation, which utilizes pressurized water to cut through soil and a vacuum to remove displaced soil from the trench. Lands was welding next to the trench when, according to Lands, the ground collapsed beneath him and he slid into the trench, sustaining injuries.

{¶ 26} 2. In the Bureau of Workers' Compensation ("BWC") first report of an injury, occupational disease or death ("FROI" or "FROI-1") form, Lands's injury was described as follows: "Welding at ground level on steel poles. Kneeling on ground [and] loose soil gave way leading to [Lands] slipping head first into a [seven foot] hole." (Stip. at 9.)

{¶ 27} 3. Lands's workers' compensation claim was ultimately allowed for the following conditions: anterior cruciate ligament tear left knee; unspecified sprain of right wrist; strain of muscle, fascia and tendon at neck level; sprain of medial collateral ligament of left knee; contusion of left knee; contusion of left front wall of thorax, left chest; unspecified sprain of left shoulder joint left shoulder; pulmonary embolism bilateral; deep vein thrombosis tibioperoneal vein; fracture scaphoid/navicular, right wrist; fracture scaphoid/navicular with non-union, right wrist; sprain left acromioclavicular joint; low back strain; herniated disc C5-C6; L4-5 disc displacement with left radiculopathy; L5-S1 central disc displacement; herniated disc C5-C6; substantial aggravation of pre-existing arthritis, right wrist; left shoulder adhesive capsulitis.

{¶ 28} 4. On September 14, 2020, Lands submitted an application for additional award for violation of specific safety requirement in a workers' compensation claim (also known as an "IC-8/9" form). In the application, Lands listed a violation of the specific safety requirement contained in Ohio Adm.Code 4123:1-3-13. Lands described how the injury occurred as follows: "Injured worker was welding on steel poles at ground level near a footer hole for Meijer job site. He was kneeling on the ground welding when loose soil gave way causing him to fall head first into the bottom of the [seven foot] footer hole." (Stip. at 1.)

{¶ 29} 5. Following an investigation, the BWC's Safety Violations Investigations Unit ("SVIU") released a report of investigation dated January 7, 2021. As detailed in the

SVIU report, the BWC investigator conducted an interview with employees and a representative of Allen Industries. According to the investigator, Allen Industries provided the following description of the incident giving rise to Lands's injuries:

> The employer indicated Mr. Lands was in the process of welding an angle to a steel pole in the excavation when the ground gave way beneath him and he slid into the excavation. The electrical lead for the welder also had fallen into the hole with him and he received an electrical shock, according to the employer. The employer further indicated Mr. Hatfield turned off the power to the welder and assisted Mr. Lands out of the excavation.
>
> * * * The employer described the excavation at the jobsite as being 2' in diameter and 5'4" deep, which by definition would have been considered a trench.

(Stip. at 4.)

The investigator also interviewed Lands, who provided a statement that was attached to the SVIU report. According to Lands, the trench was at least seven feet deep and between five and six feet wide. There was not shoring or bracing at the trench. The soil at the excavation site was set from weather conditions and "cave-ins were occurring in the hole." (Stip. at 7.) Lands stated that he brought up the soil conditions to his supervisor at Allen Industries and was told to continue to install the sign. Lands stated that while he was welding, "the ground gave way under me and I fell head-first into the bottom of the hole." (Stip. at 7.) According to Lands, he was "buried upside down by the dirt and receiving an electrical shock from the welder lead, approximately 220 volts." (Stip. at 7.) Lands stated that he was in the hole for approximately two minutes before Hatfield shut off the electricity to the welder and placed a ladder into the hole for Lands to use in climbing out.

{¶ 30} 6. A commission staff hearing officer ("SHO") conducted a hearing on the application for VSSR award on September 22, 2021. On December 22, 2021, the SHO issued an order denying the application for VSSR award. The SHO found the area where Lands's injury occurred was a construction site and the hole into which Lands fell was a trench. The SHO found there was insufficient evidence to support that Allen Industries violated Ohio Adm.Code 4123:1-3-13(D). Specifically, as pertaining to Ohio Adm.Code 4123:1-3-13(D)(1), the SHO found there was insufficient evidence presented "regarding if the area where the Injured Worker was positioned when the ground gave way was the exposed face of the

trench" and regarding whether "there [were] inclined earth surfaces present at the jobsite, or the angle of repose was considered." (Stip. at 129.) With regard to Ohio Adm.Code 4123:1-3-13(D)(2), the SHO found sufficient evidence supported finding the side of the trench was unstable soil, but insufficient evidence to show Lands was working within the trench. The SHO found Ohio Adm.Code 4123:1-3-13(D)(3) to be inapplicable because the evidence established the soil was not hard compact soil. Finally, the SHO found Ohio Adm.Code 4123:1-3-13(D)(6) was inapplicable because there was insufficient evidence presented that Lands was required to be in the trench.

{¶ 31} 7. Lands filed a motion for rehearing pursuant to Ohio Adm.Code 4121-3-20(E) on January 26, 2022.

{¶ 32} 8. On March 29, 2022, an SHO issued an order on behalf of the commission granting Lands's motion for rehearing because Lands demonstrated the December 22, 2021 SHO order was a clear mistake of law. The SHO vacated the December 22, 2021 order and ordered the application for VSSR award to be set for rehearing.

{¶ 33} 9. On February 8, 2023, an SHO conducted a rehearing on Lands's application for VSSR award. On April 18, 2023, the SHO issued an order granting the application for VSSR award. The SHO found Ohio Adm.Code 4123:1-3-13(D)(1) formed the basis of a specific safety application that was applicable to the facts of the claim. The SHO found the site at which Lands was injured constituted an excavation because it was a manmade cavity in the earth's surface created by removing earth and creating unsupported earth conditions. Furthermore, the excavation was a trench because it was below the earth's surface, with a depth of at least five feet four inches and a width of at least two feet, thereby rendering the depth greater than the width.

Addressing the argument of Allen Industries that the specific safety requirement did not apply because Lands was not working in the trench, the SHO found that "Lands was reaching into the trench when the ground gave way" and that Ohio Adm.Code 4123:1-3-13(D)(1) "does not include a requirement that an Injured Worker be fully inside the trench for the section to apply." (Stip. at 175-76.) The SHO found that Allen Industries "did not provide the required protection and is in violation of Ohio Adm.Code 4123:1-3-13(D)(1)" and that "this violation was the proximate cause of [Lands's] injuries." (Stip. at 176.)

Next, the SHO addressed several arguments made by Allen Industries. With regard to the argument of Allen Industries that Lands could have brought Sonatubes to shore and brace the trench, the SHO found as follows:

> The ability of the Injured Worker to proceed differently, does not satisfy the Employer's obligation. The Employer is ultimately responsible to comply with the specific safety requirements. It cannot simply shift the responsibility to the Employee unless the Employer first complies and the Employee's unilateral negligence causes the injury. * * * There is no evidence presented that the Employer complied with Ohio Adm.Code 4123:1-3-13(D)(1) and there is no allegation that Mr. Lands was unilaterally negligent.

(Stip. at 176.) The SHO also rejected the argument of Allen Industries that Mich. Adm.Code 408.40901 precluded the application of Ohio Adm.Code 4123:1-3-13(D)(1). The SHO found that the Michigan rule applied when an employee was required to enter a trench, but did not address circumstances when an employee is reaching into a trench. The SHO found that the facts in Lands's claim did not demonstrate that Lands was required to enter the trench. As a result, the SHO found there to be no irreconcilable conflict that would negate the applicability of Ohio Adm.Code 4123:1-3-13(D)(1).

Having found Allen Industries to be in violation of Ohio Adm.Code 4123:1-3-13(D)(1) and that the violation was the proximate cause of Lands's injuries, the SHO ordered an additional award of compensation be granted to Lands in the amount of 40 percent of the maximum weekly rate.

{¶ 34} 10. On May 24, 2023, Allen Industries filed a motion for rehearing pursuant to Ohio Adm.Code 4121-3-20(E) on the basis of alleged clear mistakes of fact and law in the SHO's April 18, 2023 order.

{¶ 35} 11. Characterizing the May 24, 2023 motion for rehearing as a request for reconsideration, the commission denied the request on June 22, 2023.

{¶ 36} 12. Allen Industries commenced this action filing a complaint for writ of mandamus on August 2, 2023.

## II. Discussion and Conclusions of Law

{¶ 37} Allen Industries asserts entitlement to a writ of mandamus because the commission abused its discretion by granting the application for VSSR award.

**A. Requirements for Mandamus**

{¶ 38} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, a relator must establish a clear legal right to the requested relief, that the commission has a clear legal duty to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). "Because the commission's decision regarding a VSSR does not involve a claimant's right to participate or to continue to participate in the fund, it is not appealable under R.C. 4123.512(A) and must be challenged by a writ of mandamus." *State ex rel. Cassens Corp. v. Indus. Comm. of Ohio*, ___ Ohio St.3d ___, 2024-Ohio-526, ¶ 9.

{¶ 39} A writ of mandamus will issue where "there is a legal basis to compel the commission to perform its clear legal duty under the law, including when the commission has abused its discretion in carrying out its duties." *State ex rel. Belle Tire Distribs. v. Indus. Comm. of Ohio*, 154 Ohio St.3d 488, 2018-Ohio-2122, ¶ 25. "Where a commission order is adequately explained and based on some evidence, even evidence that may be persuasively contradicted by other evidence of record, the order will not be disturbed as manifesting an abuse of discretion." *State ex rel. Mobley v. Indus. Comm. of Ohio*, 78 Ohio St.3d 579, 584 (1997). Additionally, a writ of mandamus " 'may issue against the Industrial Commission if the commission has incorrectly interpreted Ohio law.' " *Cassens* at ¶ 10, quoting *State ex rel. Gassmann v. Indus. Comm.*, 41 Ohio St.2d 64, 65 (1975).

**B. Violations of Specific Safety Requirements**

*1. Authority for and Enforcement of Specific Safety Requirements*

{¶ 40} The Ohio Constitution provides the commission with authority to determine VSSR claims, providing in pertinent part:

> For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state, determining the terms and conditions upon which payment shall be made therefrom. * * * Such board shall have full power and authority to hear and determine whether or not an injury, disease or death

> resulted because of the failure of the employer to comply with any specific requirement for the protection of the lives, health or safety of employ[e]es, enacted by the General Assembly or in the form of an order adopted by such board, and its decision shall be final.

Ohio Constitution, Article II, Section 35. R.C. Chapter 4121 "reflects this constitutional provision of authority and addresses VSSR violations." *Zarbana Industries v. Hayes*, 10th Dist. No. 18AP-104, 2018-Ohio-4965, ¶ 17. R.C. 4121.47(A) provides that "[n]o employer shall violate a specific safety rule adopted by the administrator of workers' compensation pursuant to [R.C. 4121.13] or an act of the general assembly to protect the lives, health, and safety of employees pursuant to [Ohio Constitution, Article II, Section 35]."

{¶ 41} A specific safety requirement is one that is (1) enacted either by the General Assembly or through an order of the Industrial Commission; (2) is specific, not general; and (3) is made for the protection of the lives, health, or safety of employees. *State ex rel. Cotterman v. St. Mary's Foundry*, 46 Ohio St.3d 42, 44 (1989), citing *State ex rel. Trydle v. Indus. Comm.*, 32 Ohio St.2d 257 (1972), paragraph one of the syllabus. "A 'specific requirement' is more than a general course of conduct or general duty or obligation flowing from the employer-employee relationship; rather, it 'embraces such lawful, specific and definite requirements or standards of conduct * * * [that] are of a character plainly to apprise an employer of his legal obligation toward his employees.' " *State ex rel. Precision Steel Servs. v. Indus. Comm. of Ohio*, 145 Ohio St.3d 76, 2015-Ohio-4798, ¶ 17, quoting *Trydle* at paragraph one of the syllabus. Specific safety requirements "must 'forewarn the employer and establish a standard which [the employer] may follow.' " *State ex rel. G & S Metal Prods. v. Moore*, 79 Ohio St.3d 471, 476 (1997), quoting *State ex rel. Howard Eng. & Mfg. Co. v. Indus. Comm.*, 148 Ohio St. 165 (1947), paragraph one of the syllabus. "[S]pecific safety requirements are ' "intended to protect employees against their own negligence and folly as well as to provide them a safe place to work." ' " *State ex rel. Byington Builders, Ltd. v. Indus. Comm. of Ohio*, 156 Ohio St.3d 35, 2018-Ohio-5086, ¶ 40, quoting *Cotterman* at 47, quoting *State ex rel. U.S. Steel Corp. v. Cook*, 10 Ohio App.3d 183, 186 (10th Dist.1983).

{¶ 42} "An award for a VSSR is 'a new, separate, and distinct award' over and above standard workers' compensation benefits. It is not covered by an employer's workers' compensation premium." *Precision Steel* at ¶ 15, quoting *State ex rel. Newman v. Indus.*

*Comm.*, 77 Ohio St.3d 271, 272 (1997). Thus, a "VSSR award is intended to penalize employers for failing to comply with [specific safety requirements], and only those acts within the employer's control should serve as the basis for establishing a VSSR." *State ex rel. Ohio Paperboard v. Indus. Comm. of Ohio*, 152 Ohio St.3d 155, 2017-Ohio-9233, ¶ 20.

{¶ 43} In order to prove a VSSR claim, a claimant must establish that (1) an applicable and specific safety requirement was in effect at the time the injury occurred, (2) the employer failed to comply with the requirement, and (3) the failure to comply was the proximate cause of the injury in question. *State ex rel. Scott v. Indus. Comm. of Ohio*, 136 Ohio St.3d 92, 2013-Ohio-2445, ¶ 11. "Because a VSSR award is a penalty, a specific safety requirement must be strictly construed and all reasonable doubts concerning the interpretation must be resolved in favor of the employer." *State ex rel. 31, Inc. v. Indus. Comm.*, 152 Ohio St.3d 350, 2017-Ohio-9112, ¶ 21, citing *State ex rel. Burton v. Indus. Comm.*, 46 Ohio St.3d 170, 172 (1989). *See State ex rel. Richmond v. Indus. Comm.*, 139 Ohio St.3d 157, 2014-Ohio-1604, ¶ 17 (stating that "[t]he interpretation of [specific safety requirements] rests with the commission"). However, "the strict-construction rule does not apply in resolving factual disputes," and such rule "permits neither the commission nor a reviewing court to construe the *evidence* of a VSSR strictly in the employer's favor." (Emphasis sic.) *State ex rel. Supreme Bumpers, Inc. v. Indus. Comm.*, 98 Ohio St.3d 134, 2002-Ohio-7089, ¶ 70.

*2. Specific Safety Requirements for Trenches*

{¶ 44} Ohio Adm.Code Chapter 4123:1-3 sets forth specific safety requirements relating to construction. The purpose of the chapter is to "provide safety for life, limb and health of employees engaged in construction activity." Ohio Adm.Code 4123:1-3-01(A). Activities encompassed within the scope of the chapter include, among others, the excavation, construction, and erection of buildings and other structures, and the excavation, construction, alteration and repair of trenches. Ohio Adm.Code 4123:1-3-01(A).

{¶ 45} Ohio Adm.Code 4123:1-3-13 governs specific safety requirements and definitions related to trenches and excavations.[1] The terms "sides," "walls," or "faces" are

---

[1] After Lands was injured on October 30, 2018, both Ohio Adm.Code 4123:1-3-01 and Ohio Adm.Code 4123:1-3-13 were amended effective January 16, 2020. Because a claimant must prove that "an applicable and specific safety requirement exists, which was in effect at the time of the injury," the former versions of the administrative code in place at the time of Land's injury apply in this matter. (Emphasis added.) *State ex rel.*

defined as "the vertical or inclined earth surfaces formed as a result of trenching or excavation work." Ohio Adm.Code 4123:1-3-13(A)(9). An "excavation" is defined as "any manmade cavity or depression in the earth's surface, including its sides, walls or faces, formed by earth removal and producing unsupported earth conditions by reasons of the excavation." Ohio Adm.Code 4123:1-3-13(A)(4). Ohio Adm.Code 4123:1-3-13(A)(4) additionally provides that "[i]f installed forms or similar structures reduce the depth-to-width relationship, an excavation may become a trench." With regard to the definition of a trench, Ohio Adm.Code 4123:1-3-13(A)(11) provides as follows: " 'Trench', when used as a noun, means a narrow excavation made below the surface of the ground. In general, the depth is greater than the width, but the width of a trench at the bottom is no greater than fifteen feet."

{¶ 46} The specific safety requirements related to trenches are contained in Ohio Adm.Code 4123:1-3-13(D), which provides in pertinent part as follows:

> (1) The exposed faces of all trenches more than five feet high shall be shored, laid back to a stable slope, or some other equivalent means of protection shall be provided where employees may be exposed to moving ground or cave-ins. (See appendix "Table 13-1").
>
> (2) Sides of trenches in unstable or soft material, five feet or more in depth, shall be shored, sheeted, braced, sloped, or otherwise supported by means of sufficient strength to protect the employees working within them. (See appendix Table 13-1 and "Table 13-2").
>
> (3) Sides of trenches in hard compact soil, including embankments, shall be shored or otherwise supported when the trench is more than five feet in depth and eight feet or more in length. In lieu of shoring, the sides of the trench above the five-foot level may be sloped to preclude collapse, but shall not be steeper than a one-foot rise to each one-half-foot horizontal.
>
> * * *
>
> (6) When employees are required to be in trenches four feet deep or more, an adequate means of exit, such as a ladder or

---

*DeMarco v. Indus. Comm.*, 10th Dist. No. 19AP-227, 2021-Ohio-1937, ¶ 6. Though the amendments appear to have caused no material changes to the portions of the administrative code applicable to this matter, it is noted that all references in this matter to administrative code are to the versions of the code in effect at the time of the injury.

> steps, shall be provided and located so as to require no more than twenty-five feet of lateral travel.

Ohio Adm.Code 4123:1-3-13(D).

## C. Analysis

{¶ 47} Allen Industries argues that mandamus should issue for two reasons. Both of Allen Industries' arguments appear to concern the applicability of Ohio Adm.Code 4123:1-3-13(D)(1)—the specific safety requirement that formed the basis of the violation.[2] First, it argues the commission abused its discretion in its interpretation and application of Ohio Adm.Code 4123:1-3-13(D)(1) because "a plain reading of the regulation requires shoring only when employees are working within trenches — not outside of them." (Allen Industries' Brief at 9.)

{¶ 48} " 'The [commission's] rules for specific safety requirements have the effect of legislative enactments' and therefore are 'subject to the ordinary rules of statutory construction.' " *State ex rel. Parks v. Indus. Comm. of Ohio*, 85 Ohio St.3d 22, 25 (1999), quoting *State ex rel. Miller Plumbing Co. v. Indus. Comm.*, 149 Ohio St. 493, 496-97 (1948). As with analysis of any statute, analysis of the administrative rule in question begins with the text. *See State ex rel. Plain Dealer Publishing Co. v. Cleveland*, 106 Ohio St.3d 70, 2005-Ohio-3807, ¶ 38, quoting *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (stating that " 'our inquiry begins with the statutory text, and ends there as well if the text is unambiguous' "). Thus, analysis of the meaning of Ohio Adm.Code 4123:1-3-13(D)(1) begins with the rule's plain text. Because the rule is unambiguous, the analysis ends there as well.

{¶ 49} Although Allen Industries contends that Ohio Adm.Code 4123:1-3-13(D)(1) only requires shoring when employees are working within trenches, the plain text of the rule contains no such limitation. Rather, the rule, which applies to the exposed faces of all trenches more than five feet high, requires shoring or equivalent protection "where employees may be exposed to moving ground or cave-ins." Ohio Adm.Code 4123:1-3-

---

[2] The commission found that Allen Industries did not provide the protections required by Ohio Adm.Code 4123:1-3-13(D)(1) and that this violation was the proximate cause of Lands's injury. Allen Industries does not deny that the protection required by Ohio Adm.Code 4123:1-3-13(D)(1) was not present at the time of Lands's injury. Nor does Allen Industries develop in its merit brief any argument that the failure to provide the required protection was not the proximate cause of Lands's injury.

13(D)(1). Similarly, the plain text of Ohio Adm.Code 4123:1-3-13(D)(3) does not mandate that an employee be within a trench in order for the requirement to apply.

{¶ 50} On the other hand, the plain text of Ohio Adm.Code 4123:1-3-13(D)(2) provides that sides of trenches in unstable or soft material, five feet or more in depth, are required to be "shored * * * or otherwise supported by means of sufficient strength to protect the **employees working within them**." (Emphasis added.) Relatedly, Ohio Adm.Code 4123:1-3-13(D)(6) only applies "[w]hen employees **are required to be in trenches** four feet deep or more." (Emphasis added.) The language in Ohio Adm.Code 4123:1-3-13(D)(2) and (6) demonstrate that rule's drafters knew how to limit the scope of a rule to apply to only employees working within trenches. *See generally Collinsworth v. W. Elec. Co.*, 63 Ohio St.3d 268, 271 (1992) (finding that lack of reference to the term "disability" in the phrase "payment of compensation" demonstrated that the General Assembly did not intend to restrict the term "compensation" to mean only "disability compensation," noting that "[h]ad the General Assembly wanted to restrict the term 'compensation' in this manner, it certainly knew how to accomplish that goal"). However, no such limiting language appears in Ohio Adm.Code 4123:1-3-13(D)(1).

{¶ 51} Adopting the interpretation of Allen Industries would require adding words to the text of the rule. Yet, as with statutory interpretation, it is not permitted to rewrite the text of a specific safety requirement in order to fit a preferred interpretation. *See 31, Inc*. at ¶ 21. *See also State ex rel. CNN, Inc. v. Bellbrook-Sugarcreek Local Schools*, 163 Ohio St.3d 314, 2020-Ohio-5149, ¶ 33 (stating that principles of statutory construction "do not authorize a court to rewrite statutory language"). Neither this court nor the commission may alter the meaning of an administrative rule by adding or deleting words from the plain text. *See generally State v. Hughes*, 86 Ohio St.3d 424, 427 (1999) ("In construing a statute, we may not add or delete words."); *Lamie v. United States Trustee*, 540 U.S. 526, 538 (2004), quoting *Iselin v. United States*, 270 U.S. 245, 251 (1926) (rejecting a party's argument that "would result 'not [in] a construction of [the] statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope' " (Brackets sic.)); *State ex rel. LetOhioVote.org v. Brunner*, 123 Ohio St.3d 322, 2009-Ohio-4900, ¶ 49. Thus, contrary to Allen Industries' argument, the plain text of Ohio Adm.Code 4123:1-3-13(D)(1) does not require shoring only when

employees are working within trenches, but instead applies where employees may be exposed to moving ground or cave-ins. Allen Industries does not specifically argue that Lands was not exposed to moving ground where he was working when the incident giving rise to his injury occurred.

{¶ 52} In arguing that the commission committed an abuse of discretion in interpreting Ohio Adm.Code 4123:1-3-13(D)(1), Allen Industries additionally states that "the Commission seems to suggest that by virtue of simply reaching into a trench the safety regulation is triggered, and if that is the case, it cannot be said that the safety regulation puts an employer on notice that shoring is required if employees are working outside of trenches or reaching into them." (Allen Industries' Brief at 9.) The April 18, 2023 SHO order does not contain such a suggestion or statement of the law. Rather, the SHO specifically stated:

> Strictly construing Ohio Adm.Code 4123:1-3-13(D)(1), the Hearing Officer finds this section obligates the Employer provide means of protection where employees may be exposed to moving ground or cave-ins. This section states the trench should be shored, laid back to a stable slope, or some other equivalent means of protection provided. The Injured Worker testified that the conditions at the jobsite were poor due to rain and the earth being preciously [sic] disturbed. The ground gave way, causing him to fall into the hole. The conditions at the jobsite were such that the employee was exposed to moving ground or cave-ins.

(Stip. at 175.) Thus, the SHO accurately described the applicability of the specific safety requirement in Ohio Adm.Code 4123:1-3-13(D)(1). The SHO properly found the requirement was applicable because Lands was exposed to moving grounds or cave-ins.

{¶ 53} Allen Industries argues there is no support in the record for the SHO's finding that Lands was "reaching into the trench when the ground gave way." (Stip. at 175.) In his testimony at the February 8, 2023 hearing, Lands testified as follows:

> You take the long pieces of angle iron, and you go down through the hole and through the opposite side wall. And you would take a sledge hammer, and you would pound the angle. It's kind of like a kickstand on a bicycle, you know. And those would be against the pole. And then you would just weld those to the pole, cut the height of them off.

> Those would be below ground in the concrete. That's simply made to keep the poles straight and square for you to pour the concrete.
>
> * * *
>
> As far as welding, we had already installed the slabs, which are the angle iron that goes into the sides. And there's multiple of them around each pole.
>
> And you -- pretty much I'm on my knees in the mud. And I always, I -- for over 35 years of welding, you keep -- any welder knows you keep your left hand on your helmet. You never touch what you're welding. You will be electrocuted and you cause a circuit.
>
> So my left hand is on there, and I had maybe a reach this far, but I'm on my knees. But **you're welding below ground**, so you're welding below the height of the service to weld the angle iron to the pole to hold it up.
>
> And what had happened at that point is the ground simply gave way below my knees and tumbles in the hole.

(Emphasis added.) (Stip. at 204-06.) Additionally, in the BWC SVIU report, Lands made the following statement of the incident giving rise to his injury:

> At the time of my injury, I had just set the large steel pole into the hole with the crane and needed to weld steel uprights to the pole. The uprights were placed inside the hole and would be encased in concrete once the footer was poured. While I was welding the steel uprights to the large steel pole, the ground gave way under me and I fell head-first into the bottom of the hole.

(Stip. at 7.)

{¶ 54} From Lands's testimony at the February 8, 2023 hearing and his statement in the BWC SVIU report, the magistrate cannot find that there exists no support in the record for the SHO's finding that Lands was reaching into the trench when the ground gave way. The SHO was best positioned to view and evaluate the testimony in determining the facts of the incident. *See generally State ex rel. Medina v. Indus. Comm. of Ohio*, 10th Dist. No. 15AP-29, 2016-Ohio-173, ¶ 11, quoting *State ex rel. Woolum v. Indus. Comm.*, 10th Dist. No. 02AP-780, 2003-Ohio-3336, ¶ 4, citing *State ex rel. Pavis v. Gen. Motors Corp.*, 65 Ohio St.3d 30, 33 (1992) ("The some evidence standard 'reflects the established principle that the commission is in the best position to determine the weight and credibility of the

evidence and disputed facts.' "). This principle is especially important when a witness makes demonstrative statements such as "I had maybe a reach this far." (Stip. at 205.)

{¶ 55} Beyond questions regarding the factual accuracy of the SHO's finding, it is necessary to consider the context in which the SHO made the finding. The SHO found Lands was reaching into the trench in addressing Allen Industries' argument that Ohio Adm.Code 4123:1-3-13(D)(1) did not apply because Lands was not working within the trench. The SHO found that "Lands was reaching into the trench when the ground gave way" and stated that Ohio Adm.Code 4123:1-3-13(D)(1) "does not include a requirement that an Injured Worker be fully inside the trench for the section to apply." (Stip. at 175-76.) While the SHO's statement may have been inartful, it was not wholly inaccurate because, as previously discussed, Ohio Adm.Code 4123:1-3-13(D)(1) does not in fact require an employee to be within the trench in order to apply.

{¶ 56} Thus, regardless of whether Lands was reaching into the trench or not, Ohio Adm.Code 4123:1-3-13(D)(1) does not contain such a requirement, nor did the SHO clearly find that it did. Instead, the SHO found that Ohio Adm.Code 4123:1-3-13(D)(1) applied because Lands was exposed to moving ground or cave-ins. Therefore, Allen Industries has not clearly demonstrated that the SHO committed an abuse of discretion in finding Ohio Adm.Code 4123:1-3-13(D)(1) applied.

{¶ 57} Second, Allen Industries argues the commission abused its discretion in finding an irreconcilable conflict does not exist between Mich. Adm.Code 408.40901 and Ohio Adm.Code 4123:1-3-13(D)(1).

{¶ 58} Under Ohio's workers' compensation law, the BWC is required to "prescribe means and methods of protecting the safety of 'employees of *every* employment and *place of employment*.' " (Emphasis sic.) *State ex rel. Bailey v. Krise*, 18 Ohio St.2d 191, 197 (1969), quoting R.C. 4121.13. In *Bailey*, the Supreme Court of Ohio found that this statutory authorization was "not limited to places of employment located within Ohio." *Id.* The Court found that "[t]o the degree that it is applicable to places of employment without Ohio, it does not purport to extend extraterritorial effect to our Constitution, statutes or safety codes," but rather "its purport is to extend extraterritorial *protection* to employment relationships in which Ohio has a legitimate interest." (Emphasis sic.) *Id.* Consistent with this reasoning, it has been held that "Ohio specific safety requirements apply

extraterritorially unless the relevant requirement irreconcilably conflicts with an out-of-state safety regulation." *State ex rel. Winzeler Excavating Co. v. Indus. Comm. of Ohio*, 63 Ohio St.3d 290, 293 (1992). *See Bailey* at paragraph one of the syllabus.

**{¶ 59}** At the time of Lands's injury, Mich. Adm.Code 408.40901, which provided the scope of construction safety standards related to excavation, trenching, and shoring, provided as follows: "Rule 901. This part pertains to the digging of excavations and trenches which an employee is **required to enter** and the supporting systems used on construction operations." (Emphasis added.) Mich. Adm.Code 408.40901.[3] *See generally Barker Bros. Constr. v. Bur. of Safety & Regulation*, 212 Mich.App. 132, 137 (1995) (construing a former version of Mich. Adm.Code 408.40901). The SHO found that an irreconcilable conflict did not exist between the Michigan and Ohio provisions because the Michigan provision "addresses the requirements when an Employee must enter the trench." (Stip. at 176.) Allen Industries contends that an irreconcilable conflict exists between the Michigan and Ohio rules because "shoring and bracing or some other safety protection is only required when employees are entering trenches and excavations." (Allen Industries' Brief at 12.)

**{¶ 60}** The plain text of Mich. Adm.Code 408.40901 makes clear that it only applies where an employee is "**required to enter**" excavations and trenches. (Emphasis added.) As previously discussed, Ohio Adm.Code 4123:1-3-13(D)(1) does not mandate that an

---

[3] After Lands's injury, Mich. Adm.Code 408.40901 was amended as follows:

> Rule 901.
>
> (1) This part pertains to the digging of excavations and trenches which an employee is required to enter and the supporting systems used on construction operations.
>
> (2) The following Michigan occupational safety and health (MIOSHA) standards are referenced in these rules:
>
> (a) Construction Safety and Health Standard Part 21. "Guarding of Walking and Working Areas," R 408.42101 to R 408.42160.
>
> (b) Construction Safety Standard Part 45. "Fall Protection," R 408.44501 to R 408.44502.
>
> (3) Up to 5 copies of the standards listed in subrule (2) of this rule may be obtained at no charge from the Department of Labor and Economic Opportunity, MIOSHA, Standards and FOIA Section, 530 West Allegan Street, P.O. Box 30645, Lansing, Michigan, 48909-8145 or via the internet at the following website: www.michigan.gov/mioshastandards. For quantities greater than 5, the cost, as of the time of adoption of these rules, is 4 cents per page.

Mich. Adm.Code 408.40901.

employee be required to enter the trench or excavation before its provisions apply. For that matter, as previously discussed, Ohio Adm.Code 4123:1-3-13(D)(1) does not mandate that an employee must be within the trench at all for its provisions to apply. Rather, the rule applies to trenches "where employees **may be exposed to moving ground or cave-ins**." (Emphasis added.) Ohio Adm.Code 4123:1-3-13(D)(1). *Compare* Ohio Adm.Code 4123:1-3-13(D)(6) (mandating required protections "[w]hen employees are required to be in trenches four feet deep or more"). Based on this clear distinction in the scope of the rules, the SHO properly found there to be no irreconcilable conflict between the Ohio and Michigan rules.

{¶ 61} Allen Industries again raises arguments related to the SHO's finding that Lands was reaching into the trench when the ground gave way. However, whether Lands was reaching into the trench or not has no bearing on the determination of whether an irreconcilable conflict exists between the Michigan and Ohio rules. As Allen Industries ably points out, neither the Michigan nor the Ohio rules "address employees reaching into a trench." (Allen Industries' Brief at 11.) More importantly, Allen Industries does not dispute that Lands was not required to enter the trench. To the contrary, it states: "Lands was not required to enter the trench, in fact, as noted by the Commission, another entity performed the excavation." (Allen Industries' Brief at 12.) In sum, Lands was not required to enter the trench, the Ohio rule does not only apply when an employee is required to enter a trench, and the Michigan rule only applies when an employee is required to enter a trench. Allen Industries has not demonstrated it was error to find there was no irreconcilable conflict between the Ohio and Michigan rules.

## D. Conclusion

{¶ 62} For the foregoing reasons, Allen Industries has failed to demonstrate a clear legal right to the requested relief or that the commission was under a clear legal duty to provide it. Accordingly, it is the decision and recommendation of the magistrate that Allen Industries' request for a writ of mandamus should be denied.

/S/ MAGISTRATE
JOSEPH E. WENGER IV

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.